Daniel K. Jones, father and next friend of Margaret Jones, a minor, v. Joseph S. Harris, Edward M. Paxson and John Lowber Welsh, Receivers of the Philadelphia & Reading Railroad Company, Appellants.

186   469
19 SC ²289

[Marked to be reported.]

*Negligence—Railroads—Grade crossing—Infant.*

A gateman at a railroad crossing does not perform his full duty to an infant of tender years by merely lowering the gate. He must go farther and, in so far as he can do so with regard to his other duties, protect the child in such a way as the circumstances permit.

In an action by a child seven years old against a railroad company to recover damages for personal injuries suffered at a grade-crossing, where there was a gate consisting of a single bar under which the plaintiff could pass, there was evidence tending to show that just before the accident the flagman lowered the gates while a train passed on the west bound track; that as the train was passing the child came to the crossing and, passing either under the gate or by the sidewalk, went up and stood by the flagman; that when the train passed she walked with him to the east track, where he stopped, but she kept on as if to cross it; that he called her back, and she returned, and stood near, facing him; that while thus situated an incoming train struck and seriously injured her. *Held*, (1) that the circumstances were such that the jury might draw an inference from them that the flagman had not fully performed his duty to the child; (2) that a verdict and judgment for plaintiff should be sustained.

Argued Jan. 13, 1898. Appeal, No. 152, Jan. T., 1897, by defendants, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1895, No. 577, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL and GREEN, JJ., dissent.

Trespass for personal injuries by a child seven years old. Before SULZBERGER, J.

The facts appear by the opinion of the Supreme Court.

Defendants' points and the answers thereto among others were as follows:

2. It being conceded that the gates were down, then the company had done their entire duty, and the mere fact that the person injured was a child, and not an adult, does not entitle her to recover. *Answer:* I decline that point in the way in which it is put. [1]

3. The duty of the company was to give notice of an approaching train. The putting down of the gates is a sufficient warning to the whole public, and the fact that the plaintiff was a child did not impose any additional duty upon the defendants. It being conceded that the gate was down the plaintiff cannot recover. *Answer:* I decline that point. [2]

4. If the jury believe that the flagman saw the child inside the gate and warned her to stay back he performed his whole duty and she cannot recover. *Answer:* That would be true if he gave her the warning that was proper under the circumstances for a man of his age and in his position to give to a child in the circumstances in which it was placed. [3]

5. Under all the evidence in this case your verdict should be for the defendants. *Answer:* I decline that point. [4]

Verdict and judgment for plaintiff for $2,135. Defendants appealed.

*Errors assigned* (1–4) above instructions, quoting them; (6, 7) refusal of the court to order the stenographer to file notes of charge, no exception having been taken before a verdict.

*Gavin W. Hart,* for appellants.—The flagman by the action of this child was called upon to perform a duty suddenly thrust upon him, and of which he had no notice. He had at the utmost seven seconds in which to know of it and to perform it, and yet with all the terror that must affect any one who sees a human being going into impending death he is charged with negligence because he was not as cool and collected as if nothing was about to happen: Werner v. R. R., 89 Pa. 59; Aiken v. R. R., 130 Pa. 380; R. R. v. Kelley, 102 Pa. 115; Brown v. French, 104 Pa. 604; Sekerak v. Jutte, 153 Pa. 117; Floyd v. R. R., 162 Pa. 29; Cleary v. R. R., 140 Pa. 19; Sheehan v. R. R., 166 Pa. 356.

*J. M. Vanderslice,* for appellee, cited McCloskey v. Ice Co., 174 Pa. 34.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The defendants' railroad with two tracks crosses at grade Ninth street in the city of Philadelphia, where that street is intersected by Poplar street. There are guard gates to protect the public from the danger of crossing when trains are approaching. A flagman is stationed there to operate the gates and flag trains. On September 30, 1895, the flagman lowered the gates while a train passed out on the west bound track; as the train was passing, Margaret Jones, a child about seven years of age, came from Poplar street to the crossing. The gates do not extend over the sidewalk, and although down, being only a single top bar, she could easily walk under them. Whether she came by the sidewalk or under the gate is not clear, but she went up and stood beside the flagman; when the train passed, she walked with him to the east track; he stopped, but she kept on as if to cross it; he called her back, and she returned, and stood near, facing him; while thus situated, an incoming train struck and seriously injured her. The father, averring negligence, brought this suit. We do not undertake to say that the facts were, beyond all doubt, proved as we have stated them, for there were inconsistencies in the statements of the witnesses; but, there was sufficient evidence to warrant the jury in finding them to be the facts, and by the verdict, so far as concerns us, they are established. The court below, in a charge so clear that it could not fail to be understood, submitted the question of negligence on the part of the flagman to the jury, instructing them that, "negligence is a failure to do what an ordinarily prudent person would have done under the circumstances, or a doing of that which an ordinarily prudent person would not have done." The jury found for plaintiff, and we have this appeal by defendants, whose counsel prefer seven assignments of error. The first is, "The learned court erred in its entire charge to the jury." So far as we can discover, this sweeping charge of error is intended to allege that the court below was mistaken as to the facts, and consequently misstated them to the jury. This assignment is not sustained by the charge or the evidence. After announcing in

correct terms the definition of negligence, instead of leaving the jury of laymen to guess at its meaning, or flounder in efforts to apply it, the court further said: "In my judgment, this definition of negligence has behind it, and necessarily involves, the definition of duty as being also shifting according to the circumstances. I think that a flagman who has a child of tender years standing alongside of him owes it to that child to assume that it will not act with that discretion which an adult would exercise, and therefore his warning to the child, and his notice to the child, must be different from that which he would give to an adult, just in proportion as more is required according to the circumstances, if you find that more is required. I say to you, therefore, that it is for the jury to define what is the proper thing for a flagman to do under the circumstances, but before you come to charge the flagman with any negligence, it is your duty to look at the circumstances." Certainly, this was correct to a demonstration. The lowered gate was sufficient warning to an adult; the flagman owed him no further legal duty; but as to a little child, this was neither a physical barrier nor a warning to the senses; able to pass under the gate, incapable of comprehending the danger indicated by its being lowered, it was exposed to all the peril of the incoming train, with no protector except the flagman. Certainly, the measure of duty shifted according to the change of circumstances. The lowering of the gate, so far as concerns the consequences to his employer, was the performance of his duty to the adult, because a disregard of the plain warning involved the adult in the consequences of his own negligence; but, if, in spite of the warning, a reckless or ignorant man had attempted to cross those tracks in view of a coming train, moral obligation and the dictates of humanity, even though there was no legal duty, should have prompted him to further effort to prevent death or mutilation. But in case of a child, there could be no recklessness or ignorance on its part which would relieve him from the legal duty of care according to that circumstance. Whether he exercised such care, was for the jury. But, to leave no possible room for misunderstanding of the law on part of the jury, the court proceeds further, thus: "As I said, an appeal to the judgment of a child must always take the risk of the child's misunderstanding it, and the child in this case did

misunderstand it, and that without legal consequence to the child's claim. Now, what were the circumstances? Having misunderstood the notice, the child passed the bar, and then it stood alongside of the flagman. The evidence on that point is furnished, as I recollect it, by two witnesses, one of them Mr. Eckes, and the other Mr. Fisher. You heard the testimony of Mr. Eckes and you heard the testimony of Mr. Fisher. You saw their manner on the stand, and it is for you to determine, first, whether they or either of them were in such a position of proximity and opportunity of vision as enabled them accurately to see or fairly to relate what had happened. That is for you. The witnesses are for you. It is for you to determine whether the narrative of Mr. Eckes does represent the facts as they occurred, whether he was in such a position and had such an opportunity to see and relate as gives you confidence that the relation is accurate. The same is true of Mr. Fisher. . . . It is contended on behalf of the plaintiff that the flagman could have performed his general duty to the public and to the railroad, and have also kept a more watchful eye upon this child. The defendants deny that as a matter of law. As a matter of law, I do not think it can be denied. As a matter of fact, it may be doubted. It is for you to determine as a matter of fact whether it is so, and in doing that you are at liberty to give credit in full to the witnesses, and although they are not contradicted by witnesses on the other side, it is your duty to give your best judgment in determining what their testimony is worth, by testing their opportunity from the places at which they stood, and giving your general opinion upon the real value of what they say. If you find from that testimony that the flagman did all that a person of ordinary prudence under the circumstances was expected to do, bearing in mind that his primary duty was to watch the crossing for the general public, and to give notice to the trains as directed by the rules; if you find that he did all that, and that he gave as much attention to the child as under the circumstances could reasonably have been expected of an ordinarily prudent man, then your verdict must be for the defendants."

Appellants' counsel assumes certain facts as proved, and from them adopts a theory which relieves the flagman from the charge of negligence; and this theory he argues the court should also

have adopted ; but there was ample evidence to establish a different state of facts which, if found by the jury, warranted the opposite inference, that of negligence.

In not a word of the charge, does the trial judge undertake to withdraw the evidence or inferences from it from the jury ; he explicitly instructs them, although the defendants offered no evidence, that the credibility of the plaintiff's witnesses and the truth of their statements were exclusively for them. He does not misstate the facts, for he does not state them at all ; he plainly says to the jury, if you find certain facts as to which the plaintiff has offered evidence, then the law is not doubtful. That was his manifest duty, and nothing less would have been a full performance of it. Therefore, appellants' first assignment of error is overruled.

The second, third and fourth assignments of error may be considered together, for in substance they embrace the same proposition. They complain of the court's refusal to affirm defendants' second and third points, and qualification of the fourth, thus:

" Second. It being conceded that the gates were down, then the company had done their entire duty, and the mere fact that the person injured was a child and not an adult, does not entitle her to recover.

" Third. The duty of the company was to give notice of an approaching train. The putting down of the gates is a sufficient warning to the whole public, and the fact that the plaintiff was a child did not impose any additional duty upon the defendants. It being conceded that the gate was down, the plaintiff cannot recover.

" Fourth. If the jury believe that the flagman saw the child inside the gate, and warned her to stay back, he performed his whole duty, and she cannot recover."

Answer of the court to fourth point: " That would be true if he gave her the warning that was proper under the circumstances for a man of his age and in his position to give to a child in the circumstances in which it was placed."

Of course, the mere fact that the child was injured, did not impose responsibility upon defendants ; neither plaintiff nor the court intimated such a claim. If defendants' counsel had submitted the propositions in the first two points singly, al-

though their bearing, if any, on the issue being tried was remote, the court would doubtless have affirmed them; but they were coupled with the further averment, inferentially, that in putting down its gates the company had performed its full duty to the child. This was not correct; the gate neither warned it of danger nor barred its progress to the track. The child having gone on the track, and being seen by the flagman in danger, then at once the further duty was imposed on the company of using care according to the circumstances, and whether it did so, was not, as the court properly held, a question of law, but one of fact for the jury. The company, so far as concerns a child of seven years who went upon its track at a crossing, in full view of its flagman, had not, as the second and third points aver, performed its entire duty when it lowered the gate. The whole current of our decisions, from Rauch v. Lloyd, 31 Pa. 358, decided in 1858, down to Dunseath v. Traction Co., 161 Pa. 124, decided in 1894, is directly opposed to the contention of appellants as asserted in these two points. All hold that the mere fact of childhood neither creates nor shields from liability. Injury to a child is a misfortune without remedy in the absence of negligence on the part of him who caused the injury; but if the latter be guilty of negligence, the heedlessness of danger by the child is no protection to him. The defendant did give notice to the public, that is, to all capable of comprehending the notice, of the coming train; it gave no notice to children so young as to render them incapable of understanding it: when the flagman saw this child going into danger notwithstanding the notice, it was his duty, so far as he could do so with regard to his other duties, to protect it; and this was the very question submitted to the jury. In note to 2 Redfield's American Railway Cases, page 439, the law from the authorities is thus summed up: "After the engineer of a railway train or any other railway operative knows that a child incapable of exercising discretion is exposed to a passing train or any other dangerous operation connected with the business of the company, he is bound to the exercise of watchfulness and effort proportioned to the peril, and has no right to expect or demand any further care to escape the peril than what may fairly be expected of one of that age in such a condition." And there is no distinction in this respect between the duty of

a locomotive engineer and that of a flagman stationed at a crossing to give the public warning of passing trains. Every case cited by appellants, as to the effect of notice by closed gates at a railway crossing, is an action by an adult against the railway company and, as we have shown, has no application to the circumstances of the case before us. The court properly negatived appellants' second and third points. To have affirmed them would have been a distinct step backwards and a significant invitation to negligent agents to disregard the helplessness, physical and mental, of childhood.

As to the fourth point, a fact was assumed which was at least the subject of controversy. The court very properly made its affirmance conditional on the finding of the assumed but doubtful fact. In this there was no error.

The sixth and seventh assignments are to the refusal of the court, to at once, on request of defendants' counsel, order a certified copy of stenographer's notes of testimony and charge to be filed. We have so fully stated our views on this subject in Curtis v. Winston & Co., opinion handed down this day, that further discussion of these assignments is unnecessary. All the assignments of error are overruled and the judgment is affirmed.

Mr. Justice Mitchell, dissenting :

The only negligence on which the defendants are held liable is that of the flagman. The whole evidence however, shows that he was endeavoring to do his duty, and there is no evidence at all to show that his judgment was so bad or exercised so perfunctorily as to amount to negligence. No specific act of negligence is charged, and the jury were permitted to find it from the mere happening of the accident and their inference therefrom that the flagman might have done something more than he did to prevent it. What that something was nowhere appears in the evidence. The witnesses say that when the flagman called the child back from her place of danger she came back and "stood alongside of him." He was in a place of safety and had a right to assume that she was. Just why she was not, whether both he and she made a mistake in the few inches of her position that brought her within reach of the overhang of the engine, or whether she moved slightly after coming to his side, nowhere appears, but no negligence can be imputed to

him unless he was bound to devote such attention to the child as to insure her against injury. There is no such legal requirement. His principal duty was to watch the train and the crossing which it was approaching. In the entire absence of any specific act, either by commission or omission, the jury should not have been allowed to find negligence on the general idea that there was something, not testified to, which he might have done to prevent the injury, or practically that the defendants were insurers against accident.

GREEN, J., joins in this dissent.