# The Philadelphia and Reading Railroad Company *versus* Spearen.

*Liability of railroad company for injury by trains done to persons on the track of the road.—Admissibility in evidence of notes of testimony taken by counsel on former trial.—Negligence a question of fact.*

1. The rules which regulate the distance at which trains shall run from each other on a railroad, are intended solely for the protection of the property of the company, and the safety of their employees and passengers, and not for persons who may be travelling along the highway; and no inference of negligence can be drawn from the proximity of trains, in an action to recover damages for an injury done to a person while crossing the railroad track at a place not known or used as a public crossing.

2. Where a child about five years of age, in attempting to run across a railroad between a coal train and an engine and tender which was following close behind it, was struck by the engine and injured, it was held that the company were not answerable in damages without proof of want of ordinary care in the engineer at the time when, and the place where, the injury was done.

3. There is no absolute rule as to what constitutes negligence: that conduct which might be so termed in one case, being in another properly considered ordinary care; nor in cases where it is concurrent, will the same rule apply to adults and to children. It is therefore always a question of fact for the jury, under the instruction of the court, as to the relative degree of care, or the want of it, growing out of the circumstances and conduct of the parties.

4. The notes of testimony taken by counsel on a former trial of the cause, between the same parties, may be read in evidence where he testifies that "they contain the whole of the substance of the examination in chief, but that the cross-examination was not so full," and that "he thought he took down the testimony in chief, and some of the cross-examination, all that was material."

ERROR to the Common Pleas of *Schuylkill county.*

This was an action of trespass on the case for Julia Spearen, by her next friend Thomas Spearen, against The Philadelphia and Reading Railroad Company, to recover damages for an injury done to her by the careless use of one of the defendants' locomotives upon their railroad, when the plaintiff was attempting to cross it. There was a verdict and judgment for plaintiffs.

The main errors assigned were, the permitting Mr. Bannan, who was of counsel in the cause, to read in evidence his notes of the testimony of James Geary, taken before the arbitrators in this case, against the objection that he had not taken down the whole of the cross-examination of the witness; and the instruction given to the jury by the court below on the subject of the liability of the defendant under the circumstances of the case.

The whole case will be found in the opinion of this court.

*W. B. Wells* and *C. Tower*, for plaintiff in error.

*Franklin B. Gowen, Thomas R. Bannan,* and *B. Bartholomew,* for defendants in error.

The opinion of the court was delivered, March 21st 1864, by

AGNEW, J.—Julia Spearen, a little girl about five years of age at the time of the injury, was returning from school. Instead of going to the proper crossing of the railroad, she went down the track about twenty-five yards below it, and was standing with a little sister beside her uncle, the watchman of the crossing, placed there to guard it.

A coal-train was coming down the track of the railroad, and whistled before it came to the crossing. While passing the place where Julia was, she stood beside her uncle near to the track. Immediately behind the coal train, a light engine, that is, one with its tender only, was coming, distant from the hindmost coal-car, as variously stated, from thirty to fifty yards. The coal-train was running slowly, and the light engine approaching somewhat faster; but the proof is, that a light engine can be stopped within the length of itself and tender, and this one was thus stopped at the time of the accident. Immediately after the coal-train passed, and as the light engine approached, Julia started quickly and ran to cross the track before the light engine. Her uncle and another person near by called to stop her, but she ran forward. Her uncle (the watchman) ran after her, catching her just as the engine struck her, and was himself struck and injured. She was cast forward upon the track, and three of her fingers and part of her hand cut off. On her part it was alleged, the whistle of the light engine was not blown before coming to the crossing above. As is usual in such cases, the plaintiffs' witnesses swore that they did not hear the whistle, while those of the defendants swore it was blown. The plaintiff also alleged, that the light engine was within the distance of the coal-train, forbidden by the company's rules, while the defendants proved, that those rules did not apply to a light engine, which can be safely run " close up." The accident occurred in the daytime.

Upon the undisputed facts, the case is simply one of a little thoughtless child running suddenly to cross before an engine, at a place where the engineer would not expect it, and being knocked down and injured before the engine could be ordinarily stopped. The place where the child stood, the short distance she had to run, the striking of her and of the watchman also, just as they reached the track, and the slow rate at which the engine was running after the coal-train, are facts which in themselves indicate the nature of the case, and prove that the disputed fact, whether the engine whistled before it came to the crossing, could have had nothing to do in causing the injury. On the contrary, the fact that the passengers along the highway, and the little girl

[The Philadelphia and Reading Railroad Co. *v.* Spearen.]

herself, who stood beside her uncle, had all been arrested by the passing train, while the light engine was immediately in the rear of it, in full view from the track to any one attempting to cross it; and the calling of the watchman and the person near to him to prevent Julia from crossing, all show that her act was one of childish thoughtlessness and heedlessness, entirely disconnected from the omission to whistle before crossing the highway, and the distance between the trains.

Under these facts, it is very clear that being where she had no right to be, and darting headlong before the engine, had she been an adult of discretion there could be no right of recovery. But being a child, the same degree of caution would not be required of her, and the case would turn upon the conduct of those in charge of the engine which did the injury. The act of the child being the immediate cause of her own injury, it is not the remote negligence of the company we must look to, but the proximate— that is the conduct of the engineer upon the engine at the time of the injury. Hence, the omission to whistle before crossing, or the relatively unsafe distance between the engine and the train before it, cannot determine the case. They did not contribute to the accident, and are no part of the company's neglect of duty to this particular party under the circumstances. The injury was not at the crossing, but below it, where the plaintiff had no right to be; and where there was no duty upon the engineer to suppose she would be. The engine was in full view to any one attempting to cross, and within a few feet of the train which had already arrested the plaintiff's attention and prevented her from crossing. The danger of crossing just before the engine was visible to any one possessing ordinary discretion, and those near to her saw it. She suddenly ran upon the track, and was struck just as she reached it. No time was left to those upon the engine to guard against the injury. The suddenness, shortness of time, and unexpectedness of a child's appearance before the engine made it exceedingly difficult, perhaps impossible, to avoid the injury.

It is manifest that it was not the small distance between the engine and the train which was the cause, but the want of discretion in the child. It is the right of the company to run its trains as far apart or as close as it may choose; for its use of its own road is its right. The rule which forbids approximation of trains too closely is for the protection of themselves, and the property and persons they carry, not a rule having respect to those who travel the highway. For them it is sufficient to be warned of the passing train. A passenger upon the train may well complain of a breach of a rule as to distance of interval made for his protection, because its breach contributes to his injury. But here the distance between the engine and the train had nothing to do

with the right of those crossing the track. If the traveller has notice and sees the train or engine, it is his duty to stop—if he cannot pass safely. If he sees two trains, he must stop till both have gone by. He cannot, because one has passed him, throw himself into the very jaws of danger and then claim compensation for his rashness, on the ground that the interval was unsafe as between the trains themselves.

The question here is, was the company by its agents guilty of any breach of duty to the plaintiff when crossing the track. If nothing was done by the person controlling the engine to cause the injury, no cause of action can arise. Nothing is better settled than the right of railroad companies to the lawful use of their roads without let or hindrance of those who have no right to interrupt or molest their enjoyment: Railroad Company v. Skinner, 7 Harris 298; Stucke v. Railroad Company, 7 Am. Law Reg. 733; Railroad Company v. Norton, 12 Harris 465; Philadelphia and Reading Railroad Company v. Hummell, Leg. Int. 1863, March 20th, p. 92.

The engine in this case having safely passed the crossing appropriated to travellers, the engineer was under no duty to suppose any one would attempt to cross the track suddenly right in front of the engine. He had a right to suppose a clear track, and was not guilty in failing to use precaution where he had no reason to expect interruption. Nor is the company responsible for the private arrangement of the uncle with the mother of the child to see it across the road at the crossing. It is the duty of parents in the vicinity of a railroad to see to the safety of their little children. It is only out of a breach of duty as the watchman at the crossing, that a liability could arise; not out of his superadded promise to the mother as a relative. His taking charge of the little girl would therefore create no liability, unless it further appeared that he had done or omitted to do an act contrary to his duty as a watchman, which caused or led to the injury.

In view of these principles, and looking to the facts of the case, we think there was error in the charge. But in justice to the learned judge who tried the cause, it is proper to say, that abstractly he stated the law correctly in the main. Separately taken, it would be difficult to find fault with the propositions stated. But the error lies in the effect of the charge as a whole; in its application to the facts of the case, and in leading the jury to infer and find the remote acts of negligence, as the ground of action, instead of narrowing their consideration to the immediate acts at the time of the injury, and its effect in producing an impression, that in the case of a child its unlawful acts may not be a ground of defence.

Two legal propositions grew out of the immediate occurrences:

the first as to the degree of caution or prudence required of a child of such tender age; and the second, as to the degree of care and diligence required of the servants of the company.

We agree with the learned judge, it would be a hard rule that would hold a child of five years of age to the same measure of care and diligence in avoiding the consequences of the neglect or unlawful acts of others which is required of adults. There is authority for this: Rauch *v.* Lloyd and Hill, 7 Casey 358. In this case it was decided that where a child of tender years attempted to pass under a train of cars negligently left standing on the crossing of a public street, where he had a right to pass, and they had no right to be, and was injured by the starting of the cars, the owners were liable, and the attempt to pass, though recklessness and concurring negligence in an adult, is not such in a child. The same doctrine was held in The Pennsylvania Railroad Company *v.* Kelly, 7 Casey 372. See also Lynch *v.* Nurdin, 1 A. & E. (41 E. C. L. R.) 422; Bridge *v.* Gardiner, 19 Conn. 507; Robinson *v.* Cove, 22 Vermont 213.

The degree of care required of the servants of the company in such a case is dependent in some measure upon the capacity of the injured party. If an adult should place himself upon the railroad where he has no right to be, but where the company is entitled to a clear track, and the benefit of the presumption that it will not be obstructed, and should be run down, the company would be liable only for wilful injury, or its counterpart, gross negligence. But if a child of tender years should do so, and suffer injury, the company would be liable for the want of ordinary care. The principle may be illustrated thus. If the engineer saw the adult in time to stop his train, but the train being in full view, and nothing to indicate to him a want of consciousness of its approach, he would not be bound to stop his train. Having the right to a clear track, he would be entitled to the presumption that the trespasser would remove from it in time to avoid the danger, or, if he thought the person did not notice the approaching train, it would be sufficient to whistle to attract his attention without stopping. But if, instead of the adult, it were a little child upon the track, it would be the duty of the engineer to stop his train upon seeing it. The change of circumstances from the possession of capacity in the trespasser to avoid the danger, to a want of it, would create a corresponding change of duty in the engineer. In the former case, the adult concurring in the negligence causing the disaster, is without remedy, in the latter, the child not concurring from a want of capacity, the want of ordinary care in the engineer would create liability. But if the train were upon the child before it could be seen, or if it suddenly and unexpectedly threw itself in the way of the engine, the engineer being incapable of exercising the measure

of ordinary care to save it, the child would be without remedy, for the company's use of its track is lawful, and the presence of the child upon the track is unlawful.

There is no absolute rule as to negligence to cover all cases. That which is negligence in one case, by a change of circumstances will become ordinary care in another, or gross negligence in a third. It is a relative term depending upon the circumstances, and therefore is always a question for the jury upon the evidence, but guided by proper instructions from the court. "Duties grow out of circumstances," as it is well remarked by Mr. Justice Woodward, in Reeves v. Delaware, L. and W. Railroad Co., 6 Casey 461, and the relative degree of care, or want of it, grows out of the circumstances and conduct of both parties. These principles will be found strongly illustrated in the cases of The Railroad Company v. Norton, 12 Harris 465, and Philadelphia and Reading Railroad Company v. Hummel, Leg. Int. 1863, March 20th, p. 92. In the former case, the plaintiff was sawing wood upon a machine fastened to the track, with the permission of the superintendent, and was injured by the train of another company having a right to use the track, the conductor of which knew of the machine being there, and was guilty of negligence on the occasion; yet it was held that the plaintiff, being in an unlawful place, was not entitled to recover.

In the latter case the cars were moving slowly, by their own gravitation, under the complete control of the engineer, and the plaintiff, a child, was injured by getting upon the track where it had no right to be, and it was held there could be no recovery. The principles stated by Justice Strong in that case have a strong bearing upon this.

The error the court fell into was in not confining the attention of the jury to the question of negligence at the time and place of the injury, and in leaving them to understand that a remote negligence, not causing or contributing to the injury, would create a liability to one who trespassed upon the track, and caused her own injury, "by suddenly darting out (to use the language of the judge) to pass the track, probably without knowing or heeding that the engine was coming." The impression would be deepened by the closing part of the charge, wherein the jury were told, "Whether Julia Spearen was on the track by the request of the company's agent, or there without right, if the child exercised such prudence as could be reasonably expected from one of her tender age, the company are not excused from the consequences of any injury arising from the negligence of their servants."

The defendants also excepted to the admission of the testimony of James Geary, read from the notes of Mr. Bannan, taken

11 Wr.—20

at a former trial. We see no error in the admission of Mr. Bannan's notes, upon the corrected statement of his testimony, found in the paper-book of the defendant in error. It is clearly within the rule stated in Cornell v. Green, Administrator of McCord, 10 S. & R. 14; Chess v. Chess, 17 Id. 409, and Rhine v. Robinson, 3 Casey 30. Indeed, the testimony of Mr. Bannan as to his notes, is more satisfactory than that of Mr. Parker, in the case last cited.

The objection chiefly urged in the argument was that Mr. Bannan's statement that he took down all of the cross-examination that was material, was the substitution of his opinion only, for the fact of materiality, notwithstanding he said it was a fact, not an opinion. But the same feature is observable in the testimony of Mr. Forward, in Chess v. Chess, and of Mr. Parker, in Rhine v. Robinson. Mr. Forward said, "I may have omitted what I supposed to be immaterial to the issue trying." Parker said, "My belief is, I have the substance of all the witness said that I deemed material to the issue on my notes." He had also said, "I have no particular recollection of how much cross-examination I took in the case."

It is certainly true, that to some extent this is submitting the materiality of the testimony to the opinion of the note-taker, but not to an extent more injurious than the total loss of all such testimony would inflict. Clearly, if it appeared that the person taking the notes culled the facts testified to, taking down those he deemed material, and omitting those he thought immaterial, his notes would not be received, for he would not be giving us the true substance of the testimony. But if he gives us the substance, though he cannot say he has taken down every expression of the witness, and may have omitted language that seemed immaterial, there is not such an apparent loss of substance as justifies a rejection. If we insist upon a rigid observance of everything said which tends to develop the testimony according to its precise truth, the notes must always be rejected, unless taken in short-hand when both question and answer are noted; for it is a well-known fact that without the question as well as the answer, the precise meaning of the witness is often lost. Every one experienced in taking testimony is also aware that many questions are answered by a mere affirmative or negative, and in taking down the testimony in the form of a statement, as it is usually done, it is therefore the language of the question which is really taken in the form of an answer. A very large portion of all notes is of this character, yet no one has ever thought it a solid objection to receiving the notes. The substance is not the words identically, but the substantial expressions of the witness, and must admit of some change from the mouth to the paper. The substitution of the notes for the lost testimony

[The Philadelphia and Reading Railroad Co. *v.* Spearen.]

of the living witness is a necessity, that all may not be lost, though something may be. To say that the notes must be a perfect transcript of the language is to reject all secondary evidence of the testimony. We must trust something to the judgment of the court trying the cause, to see to it that the notes come with a measure of proof that is likely to furnish all that was material in the testimony. We think, in this case, they were properly admitted.

Judgment reversed, and a *venire de novo* awarded.

WOODWARD, C. J., dissented, and THOMPSON, J., was absent at Nisi Prius, when this case was argued.