# Piepke, Appellant, v. Philadelphia & Reading Railway Company.

*Negligence—Railroad companies—Infants—Child of tender years—Duty of company.*

1. The degree of care required of the servants of a railroad company, where a person is run down upon the track by an engine, depends in some measure upon the capacity of the injured party. If an adult should place himself upon the railroad where he has no right to be, but where the company is entitled to a clear track and the benefit of the presumption that it will not be obstructed, and should be run down, the company will be liable only for wilful injuries or their counterpart, gross negligence; but if a child of tender years should do so, and suffer injury, the company would be liable for want of ordinary care.

2. An engineer controlling a train is not bound to stop because he observes an adult upon the track, if he has no reason to believe that the adult does not observe the approaching train and has plenty of time to avoid the danger; if he thinks he does not observe the train, it is sufficient to whistle without stopping. But if instead of the adult, there is a little child upon the track, it is the duty of the engineer to stop his train upon seeing it.

3. Where in an action against a railroad company to recover

damages for personal injuries it appeared that the plaintiff, an infant between seven and eight years of age, was standing with three or more companions of similar age upon the tracks of the defendant company, in broad daylight, at the point where the tracks crossed a public street; that the attention of the plaintiff was fixed on an engine at the time discharging steam some distance away on another track; that while in this position plaintiff was struck by the tender of one of defendant company's engines which was running backwards from the opposite direction to that in which the boy was looking, and which approached without signal, and that such engine was running at the rate of from six to eight miles an hour, the case is for the jury, and it is error to enter a nonsuit on the ground that no negligence had been shown on the part of the defendant company, and that the boy was a trespasser and defendant owed him no higher degree of care than it owed to any other person wrongfully upon its right of way.

*Evidence—Witnesses—Competency—Infant of tender years.*

4. When a child, offered as a witness, is challenged on the ground of infancy, the question of his competency is never one of years, but of the capacity of the child to recall the matter on which he is to testify, to understand the questions put to him, and give rational answers to these questions, and to know that he ought to speak the truth. Much is committed to the discretion of the trial judge in determining the question of the competency of the witness in such case, but it is a legal discretion which he is to exercise, that is, a discretion guided and regulated by fixed legal principles. It is error for the trial court to exclude a witness solely because of the fact that he was little more than seven years of age at the time of the occurrence under investigation, without making any test of his intelligence, his capacity to recall the occurrence as to which he was expected to testify, or the obligation he was under to speak the truth.

Argued April 3, 1913. Appeal, No. 97, Jan. T., 1913, by plaintiffs, from judgment of C. P. No. 2, Philadelphia Co., June T., 1911, No. 2644, refusing to take off nonsuit in case of William H. Piepke, by his father and next friend Henry Piepke, and Henry Piepke in his own right, v. Philadelphia & Reading Railway Company, a corporation. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries to a child. Before BARRATT, J.

The opinion of the Supreme Court states the facts.

The court granted a nonsuit which it subsequently refused to take off.

*Errors assigned* were in refusing to take off the nonsuit and in excluding the evidence of plaintiff, William H. Piepke, who was seven years and three months old at the time of the accident and in excluding the evidence of Henry Epstein, who was a little younger than the plaintiff.

*John J. McDevitt, Jr.,* with him *John C. Bell,* for appellants.—The case was for the jury: North Penna. R. R. Co. v. Mahoney, 57 Pa. 187; Philadelphia & Reading R. R. Co. v. Long, 75 Pa. 257; Golden v. Penna. R. R. Co., 187 Pa. 635; Jones v. Harris, 186 Pa. 469; Holt v. Penna. R. R. Co., 206 Pa. 356; Keller v. Philadelphia & Reading Ry. Co., 214 Pa. 82; Kelly & Wife v. Philadelphia & Reading R. R. Co., 30 Legal Int. 140; Epley v. Lehigh Valley R. R., 3 Pa. Superior Ct. 509; Lederman v. Penna. R. R. Co., 165 Pa. 118; Daubert v. Railroad Co., 199 Pa. 345; Taylor v. D. & H. C. Co., 113 Pa. 162; Philadelphia & Reading Ry. Co. v. Long, 75 Pa. 257; Rymowich v. Schuylkill Ry. Co., 231 Pa. 582; Parker v. Washington Electric St. Ry. Co., 207 Pa. 438; Philadelphia, Baltimore & Wash. R. R. Co. v. Layer, 112 Pa. 414; Philadelphia Passenger R. R. Co. v. Hazzard, 75 Pa. 367.

The evidence of William Piepke and Harry Epstein should have been received: Com. v. Furman, 211 Pa. 549; Com. v. Wilson, 186 Pa. 1; Com. v. Ellenberger, 1 Brewster 352; Com. v. Carey, 2 Brewster 404.

*Wm. Clarke Mason,* for appellee.—There are numerous decisions of this court showing that one who deviates from the permissible use of a highway and attempts its use in another way assumes all the risks incident

thereto, whether he be adult or infant: Gaughan v.
Philadelphia, 119 Pa. 503; Oil City & Petroleum Bridge
Co. v. Jackson, 114 Pa. 321; Widger v. Philadelphia, 217
Pa. 161; Pittsburgh, Ft. Wayne & Chicago Railroad Co.
v. Evans, 53 Pa. 250; Holt v. Railroad Co., 206 Pa. 356;
Railroad Co. v. Hummell, 44 Pa. 375; Moore v. Railroad
Co., 99 Pa. 301; Philadelphia & Reading Railroad Co. v.
Heil, 5 W. N. C. 91; McMullen v. Railroad Co., 132 Pa.
107; Mitchell v. Railroad Co., 132 Pa. 226; Brague v.
Railway Co., 192 Pa. 242; Leithold v. Railway Co., 47
Pa. Superior Ct. 137.

The law fixes no precise age when a witness shall be
excluded and inquiry is made by the court to ascertain
the capacity of the witness, and the admission or rejec-
tion must depend upon the sound discretion of the judge
making the examination. It must be a very flagrant
case of error to authorize the appellate court to reverse
the judgment: Com. v. Capero, 35 Pa. Superior Ct. 392;
Com. v. Furman, 211 Pa. 549.

Opinion by Mr. Justice Stewart, October 13, 1913:

The plaintiff, an infant of between seven and eight
years, with three or more companions of like tender age,
the eldest being but a year or two older than the plain-
tiff, had been about the tracks of the defendant company
on North American street in the City of Philadelphia
at or near the point of the street's intersection with
Dauphin street, but for what length of time does not ap-
pear. The defendant company maintains and operates
along said North American street four tracks. The
plaintiff was standing on the outermost of these tracks,
the other boys occupied the space between this track
and the one beyond. All had their attention fixed on an
engine on another track farther away that was at the
time discharging steam. While they were in this posi-
tion the plaintiff was struck by the tender of an engine
which was running backward with a draft of cars, com-
ing from an opposite direction to that in which he was

looking. So much is to be gathered from the testimony of the eldest of these boys who was the only one of them allowed to testify. This witness further says that the distance from the point where the boy was struck and the line of intersection between the two tracks, was about ten or twelve feet, and that no signal was given of the approach of the engine. The accident occurred on a Saturday afternoon. The engineer in charge of the engine was called by plaintiff and he testified that the engine was running at a rate of from six to eight miles per hour. He was interrogated as to nothing else. The learned trial judge directed a nonsuit, which he afterward refused to remove, assigning the following reasons for his action:

"Whether any signal was given by this train of its approach is not of very great importance, since it was a clear day, the accident having happened in the afternoon, and the little boys saw the train coming, and all of them escaped except this little plaintiff. While of course in the case of a child seven years of age, contributory negligence cannot be charged against him, he nevertheless is not permitted to recover in the absence of negligence upon the part of the defendant shown in the plaintiff's case. Besides, the boy was a trespasser upon the right of way of the defendant company, and that being the case, the defendant company owed him no higher degree of care than it owed anybody else who was wrongfully upon its right of way."

There is nothing in the evidence, as we read it, warranting the statement here made that the little boys, least of all this plaintiff, saw the train coming. The testimony of the only witness who was allowed to take the stand, the eldest of plaintiff's companions, says that when he and two of the other boys saw the train they ran, but the plaintiff, the only one upon the track, had not time to escape. The fact has importance only as it bears upon the question of the negligence of the defendant. It was not a question of plaintiff's contributory

negligence, but solely one of defendant's negligence. Was the engine whose tender struck the child operated with due regard to public safety considering the time, place, and character of the accident? This was a question the jury only could decide. The accident occurred in broad daylight, at, or hard by, a public crossing in a city where four children had assembled, one standing directly·upon the railroad tracks, and the others close by. An engine running backward approached without signal, with the result that the little fellow who stood upon the track was struck and maimed for life and his companions scattered. Assuming that this child was where he had no right to be, it was nevertheless grievous error to hold, that because of this fact the defendant company owed him no higher degree of care than it owed anybody else who was wrongfully upon its right of way. This court has never countenanced any such doctrine, but has repeatedly asserted the contrary. The law on this subject is very clearly declared in Philadelphia & Reading Railway Company v. Spearen, 47 Pa. 300. Speaking by AGNEW, J., we there said:

"The degree of care required of the servants of the company in such a case is dependent in some measure upon the capacity of the injured party. If an adult should place himself upon the railroad where he has no right to be, but where the company is entitled to a clear track, and the benefit of the presumption that it will not be obstructed, and should be run down, the company would be liable only for wilful injury or its counterpart, gross negligence. But if a child of tender years should do so, and suffer injury, the company would be liable for want of ordinary care. The principle may be illustrated thus: If the engineer saw the adult in time to stop his train, but the train being in full view, and nothing to indicate to him a want of consciousness of its approach, he would not be bound to stop his train. Having the right to a clear track, he would be entitled to the presumption that the trespasser would remove

from it in time to avoid the danger, or, if he thought the person did not notice the approaching train, it would be sufficient to whistle to attract his attention without stopping.  But if, instead of the adult, it were a little child upon the track, it would be the duty of the engineer to stop his train upon seeing it.  The change of circumstances from the possession of capacity in the trespasser to avoid the danger, to a want of it, would create a corresponding change of duty in the engineer.  In the former case, the adult concurring in the negligence, causing the disaster, is without remedy; in the latter, the child not concurring from want of capacity, the want of ordinary care in the engineer would create liability.  But if the train were upon the child before it could be seen, or if it suddenly and unexpectedly threw itself in the way of the engine, the engineer being incapable of exercising the measure of ordinary care to save it, the child would be without remedy, for the company's use of the track is lawful, and the presence of the child upon the track is unlawful."

We are of opinion that the case as here presented on part of the plaintiff called for a submission to the jury, inasmuch as it disclosed circumstances which amounted to evidence from which the jury would have been justified in inferring negligence on the part of the defendant, in the absence of exculpatory evidence.  The engine that inflicted the injury, as it approached the crossing near to which the plaintiff and his companions stood, was running upon a track along a public street of the city one hundred and twenty feet in width.  If the plaintiff could have seen the engine in time to avoid it as is claimed, it would seem that the engineman, or if not he, because his management of the engine required him to look in another direction, some one else, who was or should have been upon or about the engine under such conditions, would have had an equal opportunity to see the plaintiff and in some way avoid

running him down. Since the case must be tried again we avoid further reference to the facts.

It remains to consider the action of the court in excluding as witnesses all the plaintiff's boy companions who saw the occurrence, except the eldest, on the ground of infancy. When the plaintiff was offered as a witness, it was proposed to examine him 'as to where he was standing, what happened, how the accident occurred, with the court's and the defendant's prior right to question the boy concerning his knowledge of the solemnity of an oath and his knowledge of the circumstances." The ruling of the court was: "In view of the fact that the boy was before the court, that the court saw him, looked at him, and knows his age, I do not think that it is proper that he should be sworn and allowed to testify, because under these circumstances anything that he may say to the jury could not be dignified by the name of real testimony. It is a matter of discretion for the trial judge to say whether or not a child of this kind has a sufficient understanding and discretion, so that when he has testified upon the stand such testimony would rise to the dignity of real testimony for the consideration of a jury in a case of this kind." The law commits much to the discretion of the trial judge in determining the question of the competency of a witness, where there is no statutory definition of competency; but it is a legal discretion that he is to exercise, that is, a discretion guided and regulated by fixed legal principles. We have no statute in Pennsylvania disqualifying witnesses because of infancy. When, therefore, one offered as a witness is challenged on the ground of infancy, it is never a question of years, but of capacity of the party to recollect the matter on which he is to testify, to understand the questions put to him, and give rational answers to those questions, and to know that he ought to speak the truth. Such is the test of the common law recognized in every jurisdiction where it is not superseded by statute. The modern law and practice

follow Brasier's Case, 1 Leach's Crown Law 199, decided more than one hundred years ago, where it was distinctly held for the first time, by an undivided court, that where there is no precise or fixed rule as to the time within which infants are excluded from giving evidence, "their admission depends upon the sense and reason they entertain of the danger and impiety of falsehood, which is to be collected from their answers to questions propounded to them by the court": 1 Best on Evidence, Sec. 154. Our own court has recognized this test as the only one applicable in such cases. It is only necessary to call attention to our most recent case. In Commonwealth v. Furman, 211 Pa. 549, in a per curiam, it is said:

"The substantial test of the competency of an infant witness is his intelligence, and his comprehension of an obligation to tell the truth. The truth is what the law, under the rules of evidence is seeking, and if a full and present understanding of the obligation to tell it, is shown by the witness, the nature of his conception of the obligation is of secondary importance."

So far as the record here shows the witness was excluded solely because of the fact that he was little more than seven years of age. No test was made of his intelligence, of his capacity to recall the occurrence as to which he was expected to testify, or his understanding of the obligation he was under to speak the truth. How can it be said that this was done in the exercise of a legal discretion? It was in clear disregard of our rules. The ultimate decision in such cases rests with the trial judge, it is true, but where, as here, an infant is excluded from the witness stand without applying the test prescribed by law, it is an arbitrary conclusion and not one resting in judicial discretion.

The assignments of error directed to the questions we have considered are sustained. The judgment is reversed and venire de novo awarded.