Reagan et ux. *v.* Reading Company, Appellant.

Argued October 28, 1936.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Henry R. Heebner*, with him *Wm. Clarke Mason*, for appellant.

*Nathan Lavine*, with him *Arthur S. Salus*, for appellees.

OPINION BY RHODES, J., February 26, 1937:

This is an action of trespass brought by Anthony Reagan and Edna P. Reagan, his wife, to recover damages for the death of their minor son, Robert, as the result of injuries received in an accident alleged to have been caused by the negligence of defendant. Defendant offered no evidence, and, after presenting a point for binding instructions which was refused, rested. The jury rendered a verdict in favor of plaintiffs. Defendant's motion for judgment in its favor n. o. v. hav-

ing been refused, it appeals, assigning as error the action of the court below in refusing its point for binding instructions, the dismissal of its motion for judgment notwithstanding the verdict, a portion of the charge of the court, and the entry of final judgment on the verdict.

The scene of the accident which brought about this case is located in Philadelphia at an iron bridge which carries the Norristown branch of defendant's railroad over the Richmond branch. The south side of this bridge is 693 feet north of Hunting Park Avenue, and the north side of it is 356 feet south of the Henry Avenue bridge over the Norristown branch. The iron bridge itself is 102 feet in length. At the place in question the Norristown branch consists of double tracks extending generally north and south on an embankment 12 to 14 feet above the level of the surrounding ground. The embankment begins at Hunting Park Avenue; and contiguous thereto, extending northwardly to the Henry Avenue bridge, are open fields, excepting some industrial buildings in the vicinity of Hunting Park Avenue. There are no curves in the tracks of the Norristown branch for a distance of at least 700 feet south of the south side of the bridge over the Richmond branch. About noon on July 16, 1934, a bright clear day, Robert Reagan, then 5 years of age, his brother, Arthur, and Walter Hoster, the latter two being 8½ and 7 years of age, respectively, at the time of the trial on February 18, 1936, entered the tracks of the Norristown branch on the west side thereof at a point in the vicinity of Hunting Park Avenue. They walked northwardly between the rails of the northbound track, Arthur and Walter in the lead and Robert following them. Arthur testified that he looked when he first entered the tracks, but neither saw nor heard any train at that time; Walter Hoster said substantially the same thing.

Arthur further testified that they were "almost off the bridge" over the Richmond branch "at the end of the bridge almost, we were on the bridge"—"the end near the Henry Avenue bridge," when he heard a train whistle blow 8 or more times. Looking back he saw a train traveling north coming toward them, which was then "less than a block" away. He pulled Walter off the track and then went to get Robert who was about 4 feet behind them to the south. However, he did not reach Robert, and continues—"I hollered and then he got hit." Arthur did not see Robert struck by the train as he and Walter were standing with their backs to the iron wall on the east side of the bridge and facing north at the time. When Arthur next saw Robert the latter was on the same side of the tracks that he was on, and "right near" him "on the bridge."

The testimony of Walter Hoster corroborated that of Arthur up to the point where the children reached the bridge. After that there are some inconsistencies. He said that when they heard the whistle they all got off the tracks, including Robert. Later he said that Robert was on the track. He also contradicted Arthur when he testified that Robert had not started across the bridge and was still playing with coal at the [south] end of the bridge when the train whistle was heard. Further, that he and Arthur had crossed only half of the bridge at that time. Neither witness said what happened after the impact; they both ran home. Robert received injuries, resulting in his death early on the following morning at a hospital.

Plaintiffs' case, as to the happening of the accident, is made up of the testimony of these two children. Too much cannot be expected from such young children as witnesses, who were testifying more than a year and a half after the accident occurred. Making allowance for the age of these youthful witnesses, still

plaintiffs' evidence is otherwise unusually meager, and palpably insufficient to sustain the verdict.

The legal principles applicable to such a case as we have before us have been repeatedly stated by our appellate courts. The children had no greater right to go on defendant's tracks than adults; they were trespassers, and there was no duty on defendant to expect them and prepare for their safety. To recover it was necessary for plaintiffs to establish wilful or wanton negligence on the part of the defendant. Such negligence must be shown by proof that the engineer had actual knowledge of the presence of the boys on the tracks in time to have stopped the train and thereby to have averted the accident. "To impose responsibility in such a case, it must appear, not only that defendant's employees could or should have seen the boys, but that they did see them, with sufficient opportunity to act in the light of such observation: *Trevethan v. Philadelphia & Reading Ry. Co.*, 244 Pa. 414, 90 A. 796; *Petrowski v. Philadelphia & Reading Ry. Co.*, 263 Pa. 531, 107 A. 381; *Cover v. Hershey Transit Co.*, 290 Pa. 551, 139 A. 266": *Peden et al. v. Baltimore & Ohio Railroad Co.*, 324 Pa. 444, at page 446, 188 A. 586, at page 587.

In the instant case, to create liability on the part of the defendant, the engineer must have seen the children in a perilous position in time to have acted in the light of such observation. If defendant's engineer, knowing that a child of tender years was trespassing on the tracks of defendant, nevertheless negligently acted in such a manner as to injure the child, his conduct would be viewed in law as "intentional," or "wilful," and "wanton." See *Petrowski et al. v. Philadelphia & Reading Ry. Co.*, 263 Pa. 531, 536, 107 A. 381, 382.

Plaintiffs contend that it was incumbent upon them to prove only a want of ordinary or reasonable care

under the circumstances on the part of the defendant. This would be true if plaintiffs' testimony established that the engineer saw the children in a perilous position. "If on seeing their perilous position he failed to exercise reasonable care to avoid the accident, his conduct was wanton within the meaning of the law: *Petrowski et al. v. Phila. & R. Ry. Co.*, 263 Pa. 531 [107 A. 381], and cases there cited; also *Hojecki et al. v. Phila. & Read. Ry. Co.*, 283 Pa. 444 [129 A. 327]; *Levin v. Traction Co.*, 194 Pa. 156 [45 A. 134]; *Phila. & Read. R. R. Co. v. Spearen*, 47 Pa. 300, 304; 20 R. C. L. 143. This rule applies only where a plaintiff's perilous position is actually known to the defendant: *Trevethan v. Phila. & R. Ry. Co.*, 244 Pa. 414 [90 A. 796]": *Cover v. Hershey Transit Co.*, 290 Pa. 551, at page 557, 139 A. 266, at page 268.

In *Peden et al. v. Baltimore & Ohio Railroad Co.*, supra, in an opinion by Mr. Justice STERN, our Supreme Court said that it must appear that defendant's employee saw the children, not only that he could or should have seen them. Did the engineer here see the children when he first sounded the whistle at a distance of 800 feet from them, and did he at that distance recognize them as children, or did he become cognizant of their peril, because they were children, at some nearer point when he again sounded the whistle of the train? See *Philadelphia and Reading Railroad Co. v. Spearen*, 47 Pa. 300; *Piepke v. Philadelphia & Reading Railway Co.*, 242 Pa. 321, 89 A. 124. When defendant's engineer in the case before us actually saw the children, if he saw them at all, is a matter of conjecture.

Plaintiffs present the argument that the jury was warranted in finding from the evidence that the boys were in a perilous position on a narrow iron bridge; that defendant's engineer could see the children for a distance of at least 800 feet; that the engineer, see-

ing the children caught on a narrow dangerous bridge, blew his whistle to warn them; that, seeing the children did not get off the tracks or leave the bridge, the engineer blew his whistle 8 or 9 times, but did not reduce his speed; that he overtook the children on the bridge, and the one child was killed; that the engineer of the train saw the child when he could have brought the train to a stop or reduced its speed and thereby avoided the accident.

If plaintiffs' contention is correct, then the verdict must be sustained. After a careful examination of the record, and after reading the testimony in the light most favorable to plaintiffs and resolving all conflicts therein in their favor and giving them the benefit of every fact pertaining to the issues involved, which may be reasonably deduced from the evidence, we cannot agree that the jury would be justified in arriving at all of these conclusions. The bridge in this case was not a narrow one, as in *Cover v. Hershey Transit Co.,* 290 Pa. 551, 139 A. 266. Its width does not appear in the record, but the photographs thereof, introduced in evidence by plaintiffs, clearly show that the bridge is hardly to be distinguished from the right of way north and south of it. It is crossed by the northbound and the southbound tracks of the Norristown branch. The evidence failed to show that it was an especially perilous place to be when a train was passing, and, in fact, Arthur and Walter escaped injury by standing at the side of the bridge with their backs against the iron side wall.

In the Cover case, supra, which plaintiffs argue is similar to the case at bar, the accident happened on a trestle where there was nothing to walk on but ties, and it was impossible to pass a car should one be encountered thereon. It was there held that it was for the jury to say whether after the motorman saw the children he could have stopped his car before striking

them. He knew that the children in their perilous position had no other possible means of escape, and it appeared as a fact that he could have stopped his car within 30 or 40 feet.

Plaintiffs' evidence in the instant case does not show the speed of the train, or any facts in connection with its operation before or after the accident; and there is no testimony from which the jury could infer that the engineer could have stopped had he seen the children and recognized them as such when 800 feet away. Assuming that the engineer saw the children on the tracks of the defendant, as contended by plaintiffs, nevertheless we are unable to find any facts in the evidence which would warrant a conclusion that he could have stopped his train before reaching them and neglected to do so. In fact, there is no evidence from which it might be deduced that no such attempt was made. A jury is not permitted to guess what happened. In the absence of any evidence that the engineer saw the children or had actual knowledge of their presence on the tracks in time to have stopped his train, or that he made no attempt or reasonable effort to stop after having become aware of the threatened danger to them, there can be no recovery by the plaintiffs.

Plaintiffs refer generally to the following facts from which they argue the jury would be warranted in finding for them. The day was clear and the sun was shining. Defendant's tracks were straight and level for a distance of at least 800 feet between the point where the engineer sounded the whistle and the place of accident. The children were walking across the iron bridge between the rails of the northbound track. The engineer sounded the whistle of the train 8 or 9 times as it proceeded towards the children. The accident happened at the north or far end of the bridge.

Such facts do not show negligence on the part of

defendant's employee. To find negligence from the proven facts in this case the jury would have to guess that the engineer, if he saw the children on the tracks, had sufficient time or opportunity to stop or reduce the speed of the train and thereby to have averted the accident. The evidence, to sustain the verdict for the plaintiffs, must have disclosed that the engineer knew of the presence of the children on the track, and nevertheless proceeded and inflicted the resulting injury which could have been prevented after he first became aware of the threatened danger.

Although there is no evidence as to the speed of defendant's train, even if this train had been operated, in that locality as it is described, at a high rate of speed on defendant's own right of way, it would not, per se, be evidence of negligence on the part of the defendant. Defendant's engineer had no reason, and was not obliged, to anticipate the presence of the children where they had no right to be; and if he failed to make a timely discovery of their presence on the bridge it would not be a wanton act. See *Cover v. Hershey Transit Co.,* supra. It was necessary for plaintiffs, in order to recover, to present some evidence of defendant's negligence, i. e., want of due care on the part of defendant's employee whereby the child was run down on the bridge after he was there observed. There was no evidence of such negligence, and the jury should not have been permitted to guess that it existed. Whether the defendant's engineer could have stopped the train and avoided the accident would depend upon the speed of the train, the distance within which it could be stopped at that speed, and the distance it would have to travel before overtaking the children after he actually saw them. The jury could not possibly ascertain from the evidence the speed of the train, the distance within which it could

be stopped, or how it was operated before or after the accident.

We can look only to the record in this case, for the record and the judgment may be recorded as a precedent for other times; and we cannot permit conjecture to supply what the evidence does not contain. See *Dunn v. Commonwealth,* 6 Pa. 384, 389.

This was a most distressing accident; but one for which the defendant cannot be held liable on the testimony which plaintiffs have produced.

Judgment is reversed, and is here entered for defendant.

JAMES, J., dissents.