Dick et al. *v.* West Penn Railways Company,
Appellant.

Argued April 21, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Robert W. Smith,* of *Smith, Best & Horn,* for appellant.

*John W. Pollins,* with him *Edward G. Bauer* and *Avra N. Pershing, Jr.,* for appellees.

OPINION BY STADTFELD, J., September 9, 1943:

At about 5:20 P. M. on June 23, 1939, Marie Shaffer, then of the age of about fifteen (15) years, Betty Barnhart, then of the age of fourteen (14) years, and Norma Jane Dick, eleven (11) years of age on January 3, 1939, having walked in a northerly direction on or along the tracks of the defendant company in Fayette County, Pennsylvania, for some distance, approached a railroad bridge sixty-two (62) feet in length, which carried the single track line of the West Penn Railways Company across a creek or stream known as Redstone Creek.

For approximately nineteen hundred (1900) feet south of the bridge in question, the track of the defendant company was on a descending grade as the street car approached the scene of the accident. For the first fifteen hundred (1500) feet the descending grade was 6%, then reduced to 5%, then to 4%, 3%, 2%, and 1%, and for a distance of approximately one hundred (100) feet short of the bridge, the track was level. Until within approximately two hundred (200) feet from the bridge, the track was straight as the car descended and for the last two hundred (200) feet of the approach the trolley track curved to the right, as is shown by several photographs identified and offered in evidence.

The three girls undertook to cross this bridge. It

had not been constructed for use by pedestrians. It was necessary to walk the ties. The right of way over which the railway was operated was owned by the defendant company.

When they had progressed about half way over the bridge, the older girls heard the trolley wires hum, which was evidence to them of the approach of a trolley car. They undertook to run the remaining distance over the bridge. Betty Barnhart attempted to assist Norma Jane Dick. However, when they reached a point, variously testified as from 4 to 12 feet from the north end of the bridge, Norma Jane Dick made a mis-step or tripped. As a result her one foot and leg entered the space between the ties, and she was unable to extricate herself even with the assistance of her companion. Marie Shaffer and Betty Barnhart, her two companions, escaped. Norma Jane Dick was struck by the street car and killed. This action was brought to recover damages for her death. A point for binding instructions was refused and a motion for judgment non obstante veredicto overruled. The jury rendered a verdict in favor of plaintiff for $800 on which judgment was entered. This appeal followed. The only assignments of error relate to the refusal of binding instructions and the overruling of motion for judgment non obstante veredicto.

Steve McGalla, a passenger in the front part of the car, who sat only two or three feet from the motorman, and could see the motorman and the track ahead down to the trestle and had traveled frequently on this line during the last twenty years, testified that as the car was descending the long grade toward the bridge, the motorman was standing, with one hand on the brake lever; that during the descent he saw the three girls, two of them attempting to pull the third away; that when he first saw the girls the car was in about the middle of the hill, or, as he guessed, about 100 yards away from the girls; that the motorman blew the

whistle but made no attempt to apply the brakes until the decedent had been struck and the car had passed over the bridge.

Barbara Crepyna, another passenger on the car, testified that she was looking out of the window as the trolley descended the hill, that there was a blow which did not attract her attention, followed by the application of brakes at "the bottom of the trestle" which did. A third passenger, Margaret Egnot, corroborated the testimony of McGalla on the point that the speed of the trolley car down the grade was neither fast nor very slow.

Marie Shaffer, one of the young girls referred to supra, testified that she tried to extricate the decedent after the latter had slipped and fallen, while Betty Barnhart went ahead to the end of the bridge and made an attempt to flag the approaching car; that she herself continued with her efforts to aid the decedent until she had to jump over the bank to save her own life.

Betty Barnhart added, in her own testimony, that she placed herself in the center of the track where she could be seen by the motorman; that the car was just coming down the hill when she began shouting and gesticulating in an effort to flag the car; that the motorman waved back at her as though warning her to get off the track; and that she, too, was forced to jump over the bank when the car failed to come to a stop.

From the crest of the hill south of the bridge, where there is a public road crossing known as "Phillips", down to the bridge is 1900 feet, and from the road crossing to a few hundred feet south of the bridge the track is straight, according to the testimony of appellant's witness, Beaumont, division engineer for the company. If we take McGalla's testimony that the girls on the track could be seen from the middle of the hill, this distance is 950 feet away from the south end of the bridge, and allowing 50 feet across the bridge to

the point where the accident occurred, this would make a distance of 1000 feet.

McGalla did also testify that the distance away from the children, when he first saw them, was only 100 yards. That, however, according to his own statement, was a mere guess and is not as reliable as is his testimony that it was about the middle of the hill. It was the function of the jury to reconcile his varying testimony.

Defendant's motorman stated that he blew the whistle when he saw two of the children, and that he was not more than 175 to 200 feet from the bridge. This would be about 234 feet from the scene of the accident. He further testified that there is a so-called "farm crossing" distant about 175 feet from the southern end of the bridge and that the track is very nearly level from there to the bridge. He stated that he was not quite at the farm crossing when he saw the two older girls, but somewhere between 50 to 100 feet from it. According to the motorman's testimony the street car was traveling at the time at a speed of 55 miles per hour, a little more than 80 feet per second. Its scheduled speed, according to Beaumont, defendant's engineer, was 45 miles per hour, a little more than 70 feet per second. The motorman stated that he had passed the farm crossing when he first saw the little girl who was killed, and that he had travelled around about 100 or 125 feet from the time he saw the two older girls until he saw the third little girl.

The motorman further testified that he stopped the car in about 400 feet at a speed of 55 miles an hour, whereas the appellant's further testimony on a test made a year after the accident and a day before the trial was that a similar car traveling 45 miles an hour would require 468 feet to stop. There is no evidence other than the motorman's testimony that he applied the brakes or attempted to bring the car to a stop on

seeing the little girls on the track. As opposed to this is the statement of Steve McGalla that the motorman did not apply the brakes until after he had struck the little girl. The testimony of Barbara Crepyna is to the effect that he did not apply the brakes until he got to the bottom of the trestle. According to the motorman's testimony he had the power off as he went down the hill and had it running on its own momentum.

Under the testimony referred to we do not believe it presented a situation justifying the court in applying the rule as to incontrovertible physical facts.

We quote from the opinion in *Kennedy v. Southern Penna. Traction Company*, 333 Pa. 406, 411, 3 A. 2d 395: "While it is the rule that the court cannot accept as true that which indisputable evidence demonstrates to be false, and judgment non obstante veredicto should be entered against a litigant whose testimony stands opposed to that of disinterested witnesses and to incontrovertible physical facts: Lessig v. Reading T. & L., Co., 270 Pa. 299; Hill v. P. R. T., 271 Pa. 232; Seiwell v. Hines, Dir. Gen. 273 Pa. 259; Cubitt v. New York Cent. R. R. Co., 278 Pa. 366; Folger v. Pittsburgh Rys. Co., 291 Pa. 205; Carlo v. Bessemer & Lake Erie R. R. Co., 293 Pa. 343; nevertheless it is essential that the evidence, to justify the court in applying the rule, must be 'clear, positive, credible, uncontradicted, and indisputable in weight and amount.' See Hartig v. American Ice Co., 290 Pa. 21; Bailey v. Lavine, 302 Pa. 273; Ross v. Riffle, 310 Pa. 176; Crago v. Sickman, 310 Pa. 546; Keck v. P. R. T. Co., 314 Pa. 389. We are of opinion that this principle cannot be invoked here because the evidence fails to satisfy the requirements of the rule."

The trial judge instructed the jury, at the trial, that the children were trespassers on the day of the accident, and that the question for their decision was: "...... where was the street car of the defendant Com-

pany when the motorman first learned of the presence of the deceased Norma Jane Dick on the bridge, and did he use every reasonable effort, after he first saw the deceased child, to bring his street car to a stop and avoid this accident."

The measure of responsibility of defendant company, under the circumstances, is discussed in a comprehensive opinion by the late Mr. Justice WALLING, in *Cover v. Hershey Transit Co.*, 290 Pa. 550, 551, 139 A. 266, from which we quote: "So under all the circumstances it was for the jury to say whether, after he saw the children, he could have stopped the car before striking them. If he could and neglected to do so it was a wanton act, for he knew the children had no other possible means of escape. If on seeing their perilous position he failed to exercise reasonable care to avoid the accident, his conduct was wanton within the meaning of the law: Petrowski et al. v. Phila. & R. Ry Co., 263 Pa. 531, and cases there cited; also Hojecki et al. v. Phila. & Read. Ry. Co., 283 Pa. 444; Levin v. Traction Co., 194 Pa. 156; Phila. & Read. R. R. Co. v. Spearen, 47 Pa. 300, 304; 20 R. C. L. 143. This rule applies only where a plaintiff's perilous position is actually known to the defendant: Trevethan v. Phila. & R. Ry. Co., 244 Pa. 414. As there was no reason to anticipate the presence of trespassers on the bridge, the motorman's failure to make a timely discovery of the children, if true, would not be a wanton act, while negligently running them down after the discovery would be. Whether the motorman made reasonable effort to stop the car on seeing the children upon the track was for the jury. See Alamento v. Bessemer & L. E. R. R. Co., 255 Pa. 588." To same effect see *Reagan et ux. v. Reading Co., Appellant*, 126 Pa. Superior Ct. 175, 190 A. 412.

After a careful consideration of the entire record we are of the opinion that it would have been improper

to have withdrawn the question of defendant's wanton or gross negligence from the jury and that the verdict is fully supported by the evidence.

The assignments of error are overruled and judgment affirmed.