REDSON *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROAD COMPANIES—HORSES ON TRACK—GROSS NEGLIGENCE.

One who, while loading logs, permits his horses to remain upon the track in front of an approaching train, under circumstances which render his conduct grossly negligent, should not be permitted, in an action against the company for their killing, to go to the jury upon the theory that the engineer, knowing the danger, willfully ran them down, where there is no definite proof to contradict the engineer's testimony that he acted with all proper caution as soon as the situation became apparent to him.

Error to Ogemaw; Sharpe, J.   Submitted May 4, 1899. Decided July 11, 1899.

Case by Claude E. Redson against the Michigan Central Railroad Company for the alleged negligent killing of plaintiff's team of horses.   From a judgment for plaintiff, defendant brings error.   Reversed.

*George L. Alexander*, for appellant.

*Merrie H. Abbott* and *Charles S. Abbott*, for appellee.

GRANT, C. J.   The declaration in this case contains five counts, alleging various grounds of negligence.   The court disposed of all these in his charge, except one, either on the ground of plaintiff's contributory negligence or that no negligence was shown on the part of defendant. Failure on the part of the engineer to keep a proper lookout was one.   The court instructed the jury that, even if this were so, plaintiff was equally negligent in not keeping a proper lookout for the approach of the train, which he knew was then due, and which could have been seen approaching for a distance of over three miles.   The failure to give warning by blowing the whistle and ringing the bell was disposed of in the like manner.   It was conceded,

however, that the bell was rung automatically. There was no duty to blow the whistle, as this was not a highway as to which the duty is imposed by statute, and the court so held. The whistle was blown, according to the defendant's witnesses, as soon as the danger was discovered. The only dispute is over the distance of the engine when the whistle was blown. The court also correctly instructed the jury that there was no evidence of failure to provide suitable air-brakes, and keep them in proper order. The court very properly instructed the jury that the plaintiff was guilty of contributory negligence, and it might, with propriety, have added that it was negligence of the grossest kind. The question, however, was left to the jury, upon the theory of willful or gross negligence on the part of the defendant.

The authorities do not go to the extent of holding that the mere failure "to exercise due care or the means at hand" is gross negligence, sufficient to justify a recovery, where the plaintiff is guilty of contributory negligence. Plaintiff saw this train coming. He was just in the act of hitching onto a log. Instead of immediately removing his horses, which, it is evident, he had then ample time to do, and taking them out of danger, he ordered the log rolled up onto the car, and, before he could then get his horses removed, both the horses and his partner, Woodworth, in charge of them, were killed. Had injury resulted to the train or to the trainmen, it might just as well have been charged that he (the plaintiff) was guilty of intentional wrong as to charge that the engineer was guilty of it. It would then be gross negligence against gross negligence, willful misconduct against willful misconduct, and intent against intent; and in such case the law leaves both parties where they have placed themselves, and gives recovery to neither. The entire charge upon this point might be sustained under the authorities cited; for the court expressly said to the jury:

"I instruct you, as a matter of law, that by the term 'willful negligence,' or 'gross negligence,' as it is some-

times called, is meant the intentional failure to perform a manifest duty, in reckless disregard to the consequences as affecting the property or life of another. It also implies a thoughtless disregard of consequences, without the exercise of an effort to avoid them. In order to find the defendant guilty of reckless conduct, it must be shown by the plaintiff that the engineer knew the situation and danger, that he realized that there was danger at the time, and that he ran on in spite of that knowledge, and knowing the consequences if he failed to stop."

Under the ruling in this case, the rule of contributory negligence might as well be abolished; for in nearly every case enough testimony would be adduced to permit the jury to say that the engineer might have seen the condition, and by the use of proper means have avoided the accident.

This necessarily leads to a full statement of the facts: All the information conveyed to defendant as to the use of this track by plaintiff, and the method employed by him, comes from a statement made by him to the local agent "that he was going to load these logs upon the cars with horses." The dangerous situation was created entirely by the plaintiff, and the defendant was in no sense responsible. Plaintiff knew of the approach of trains, and that it was his duty to look out for them, and that defendant owed no duty to look out for him or his property until its engineer was in position where he must be held, in law, to have realized the danger, and to have run on regardless of it. When plaintiff's employé and witness Bowers gave notice of the approach of the train, his (plaintiff's) witness and employé Johnson was in the act of chaining the log. Instead of stopping then, and removing the horses, plaintiff gave orders to his partner, Woodworth, in charge of the horses, to pull up the log. This was done. One of the horses was off the track, and the other on, when the engine struck. It is very doubtful if Woodworth heard the notice of the approach of the train given by Bowers, and afterwards repeated by plaintiff, who stood on top of the logs, in plain sight of everything. Plaintiff

himself testifies that possibly Woodworth may not have heard him. Woodworth was killed. If Woodworth did not hear the warning, he was doing the work in the usual way, without any thought of danger. Plaintiff himself testifies that, if the team "had gone straight on about the length of a team, they could have turned to the left, and gotten off the track." I will let plaintiff tell his own story of the transaction:

"*Q.* So, by going a few feet farther south, they could have turned, and gotten off to the right?
"*A.* They could have turned off either way.
"*Q.* They could have turned off to the right by going a few feet south?
"*A.* Yes, if they had—
"*Q.* Yes, sir; but you said they turned around to go back their usual way of work?
"*A.* Yes, sir.
"*Q.* Go up the track?
"*A.* Yes, sir.
"*Q.* Your driver didn't attempt to get them off to the left, nor drive them farther along, and get them off either way?
"*A.* Yes, sir; he did make such an attempt. He stooped down to unhook his chain, and while he stooped down his team was nearly turned around, and before he could get them turned again they had got too far around for him to get them back in time. After they turned around, he didn't have time to turn them again before the train got there."

Another of plaintiff's employès and witnesses testified that, "if the team had been manageable, they might have been got out of the way, as well as Woodworth himself."

Potts, the engineer, whose deposition upon the inquest was introduced by plaintiff, and made a part of his case, testified:

"I saw a team of horses alongside the track. They were near, or in the vicinity of, the track. They were on the right of way. Could not tell what they were doing. Would infer that they were being used in loading cars. I was perhaps five or six hundred feet away when I first noticed them. I saw a man there with the horses at the

same, or about the same, time I saw the horses.   I sounded the whistle when I first saw them, and shut off the steam, and applied the air-brakes."

Potts was also sworn upon the trial, and testified as follows:

" Well, we had passed the north end of the switch about two or three hundred feet when I saw this team come from behind the end of the car and turn upon the main track north.   Immediately a man ran around them, and tried to back them up, and he could not.   He ran around behind them, and I was so close then that there was no stopping.   I applied the air-brakes, and sounded the whistle, and shut off the engine immediately, as soon as I saw them."

These statements are corroborated by the fireman.

This railroad ran through a lumber region, and the loading of cars was common in many places along the track, and had been for many years.   It was proven beyond controversy that it was the duty of those engaged in this work along the line of the road to look out for and protect themselves against passing trains; that it was not the custom to slow up when seeing persons on or about the track engaged in this work; that no such accident had ever before happened; and that it would be impossible to make schedule time if this course was not pursued.   It was the plain duty of plaintiff to keep the track clear, both for his own protection and that of those on board the train. In the face of this testimony, courts are asked to sustain a finding that the engineer saw that the team was unmanageable; that he saw, in time to stop his train, that the accident was inevitable unless he stopped; that he purposely disregarded the danger to his own life, and that of others upon the train,—for it was a passenger train,— and intentionally ran down and killed Mr. Woodworth and the plaintiff's horses.   No court should allow such a result, except upon clear and convincing proof.   The train might have been derailed, causing loss of life and destruction of property.   The conduct which would sus-

tain the verdict in this case would convict the engineer of manslaughter. He was not required to check the speed of his train, or to take means to stop it, until he was chargeable with clear notice that the horses and Woodworth were in danger, and could not get off the track before the engine reached them. The assumed conduct of the engineer, upon which the liability in this case is based, is repugnant to human nature. No one but a man of the most cruel instincts would be guilty of it. There is nothing in this case to show that the engineer did not act with promptness as the situation appeared to him, except the loose testimony of the plaintiff, who testified that he thought steam was shut off when the train was right in front of him, the instant the horses were struck, but he could not tell whether the speed of the train was checked or not; that of Bowers, who testified that steam was not shut off when the train passed him; and that of Florence Russell, that the first whistle she heard was when the train was close to the horses. There was only one horse upon the track. Woodworth was trying to get him off. Just where Woodworth stood does not appear. Who can say at what distance the engineer was bound to recognize the fact that in all probability they could not get off the track before he reached them? Is it not the merest conjecture? There is no testimony to sustain this terrible charge against the engineer of the defendant's train. He acted as he had usually done, and in the light of the situation as it appeared to him. His own preservation would have prompted him to do all in his power to avoid the accident. A jury ought not be permitted to say that his conduct was reckless and intentional, and that he deliberately rushed on, knowing the danger and the consequences.

Defendant was running its train in a lawful manner; at a lawful rate of speed, and was guilty of no act of negligence, unless its engineer was guilty of a willful and deliberate act, for which it is responsible. I cannot yield my approval of a verdict and judgment where the plaintiff himself was guilty of the grossest negligence, and asks a

court and jury to excuse it, and give damages, because the defendant's servant might have seen the danger he was in, and avoided it, and that, too, when the slightest precaution upon his own part would have prevented it. I do not think the case is in any essential particular different from that of *Frost* v. *Railroad Co.*, 96 Mich. 470.

I think the judgment should be reversed, and new trial ordered.

The other Justices concurred.