## Elliott *v.* Philadelphia Transportation Company, Appellant.

Argued April 17, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

644

*Philip Price*, with him *Bernard J. O'Connell*, for appellant.

*Maurice H. Brown*, with him *Arthur M. Harrison* and *Robert M. Bernstein*, for appellee.

OPINION BY MR. JUSTICE LINN, May 26, 1947:

The plaintiff was run down by a street car on Haverford Avenue at the intersection of Preston Street in Philadelphia. He sued the Transportation Company and recovered a verdict of $1,500. The trial court entered judgment for the defendant notwithstanding the verdict. Plaintiff appealed to the Superior Court, which reversed the judgment. We allowed this appeal.

Haverford Avenue, between 40th and 41st Streets, has a cartway 44 feet between curbs and sidewalks 18 feet wide. The block from 41st Street on the west, to 40th Street on the east, is intersected at right angles by three streets mentioned in the evidence, Budd Street, Ludwick Street and Preston Street. At the northeast corner of Preston Street and Haverford Avenue is a fire station housing a city fire engine. Defendant's single street car track is somewhat south of the center of the Avenue. Plaintiff called a surveyor from the city's Survey Bureau who testified that the distance from 41st Street to Preston Street was 421 feet 9 inches; from

Budd Street to Preston Street 232 feet 4 inches; and from Ludwick Street to Preston Street 74 feet 10 inches, distances to be kept in mind in considering plaintiff's conduct. Preston Street is 50 feet wide with a cartway of 26 feet.

Plaintiff described an extraordinary occurrence. Defendant, on the other hand, called three eye witnesses, whose evidence, if the jury had accepted it, would have justified a finding that it was a case of simple contributory negligence with nothing extraordinary about it. We of course take the oral evidence supporting the verdict and reject the rest. So considered, plaintiff's contention is that the effect of his contributory negligence drops out of the case and, notwithstanding such negligence, he may recover because defendant was guilty of wanton misconduct resulting in his injury: *Kasanovich v. George,* 348 Pa. 199, 34 A. 2d 523. Defendant contends that plaintiff's own testimony shows that he exposed himself unnecessarily and recklessly to an obvious danger and to consequences that were obvious to him and for that reason the law does not permit recovery. The trial court adopted defendant's view; the Superior Court rejected it; the courts differed as to the effect to be given to plaintiff's conduct.

At about 10:30 a. m., May 27, 1943, a clear day, plaintiff, a paper hanger by trade, was at the northwest corner of Haverford Avenue and Preston Street when he heard and saw a fire engine about a block away on Preston Street approaching southward toward Haverford Avenue; it was returning to the fire house on the northeast corner of Preston Street and Haverford Avenue. He also saw a street car approaching from the west on Haverford Avenue. He testified that on seeing the fire engine, he "went out in the middle of the street [Haverford Avenue] and I stood there right in the middle of the car track" and "waved to the trolley car" which was then "at 41st and Haverford Avenue." The

distance between him and 41st Street was 421 feet. He was familiar with the neighborhood. He gave the speed of the trolley car as "about 25 or 30 miles an hour." At first he was "facing the trolley car" but after a while he turned, facing northward, and "waved for the fire engine to come on, and the trolley car kept moving toward me." The car "was coming about the same speed, around 30 miles an hour." When the car struck him he was "looking toward the fire engine." The car stopped within its own length. The plaintiff had an unobstructed view as there was no other traffic on Haverford Avenue between 41st Street and the plaintiff. He testified that he had been facing the approaching car until it was between Budd Street and Ludwick Street, when he "turned around and had my hands up and waved for the fire engine to come on . . ." Budd Street was 232 feet from Preston Street where plaintiff stood and Ludwick Street was 75 feet from there. At the time he turned from facing the street car it must then have been at some point within the 232 feet distance between Budd and Preston Streets and must reach him within five or six seconds at the rate at which he said it was moving.

There was no reason why he remained standing in the car track to give the signals he described; he was not asked to give them. He appears to have volunteered to "flag" the fire engine into Haverford Avenue. There is nothing to show that such "flagging was needed nor that the motorman on the street car should have known what plaintiff intended by "waving" his arms. He might have given his signals just as well and in perfect safety while standing in the Avenue outside the range of the rapidly approaching car. He continued to stand in the tracks although a step or two would have taken him out of danger. By remaining on the track he also endangered the street car passengers.

The court may not hold and the jury cannot be permitted to find, that plaintiff did not realize the gravity

of the risk involved in remaining on the track in the circumstances he described.

By his evidence he brought himself clearly within section 482 (2) of the Restatement of Torts: "(2) A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto." See also section 503 (2) and section 893. Comment (a) to section 482, reads: "In order that the plaintiff's conduct may bar him from recovery, it is necessary that he not only know of the defendant's reckless conduct but also realize the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it."

Defendant had the right to operate its cars. The motorman may properly have assumed* that the plaintiff would step off the track when it became apparent to him, as it must have become apparent, that the car was not coming to a stop at Preston Street. As it approached without reducing speed, the plaintiff saw that it would not stop and that he must leave the track or risk injury. The movement of the car from 41st Street to Preston Street, a distance of 421 feet, at the rate at which the plaintiff said the car was moving, would take about 10 seconds; it was only 5 seconds from him when he turned and looked away from it. By staying on the track when he might have left it in safety, he must be held to have assumed the consequences of his rashness.

---

* In *Piepke v. Philadelphia & Reading Ry. Co.*, 242 Pa. 321, 89 A. 124, we said, ". . . . If the engineer saw the adult in time to stop his train, but the train being in full view, and nothing to indicate to him a want of consciousness of its approach, he would not be bound to stop his train. Having the right to a clear track, he would be entitled to the presumption that the trespasser would remove from it in time to avoid the danger, or, if he thought the person did not notice the approaching train, it would be sufficient to whistle to attract his attention without stopping. . . ."

This element of assumption of risk by the plaintiff was not present in *Kasanovich v. George,* 348 Pa. 199, 34 A. 2d 523, referred to above, a fact which distinguishes this case from that, because there was no evidence that Kasanovich, who was struck by the street car, knew that it was approaching behind him.

Plaintiff's reckless conduct bars recovery for the result of defendant's wanton misconduct for the same reason that contributory negligence constitutes a defense to an action based on mere negligence. Contributory negligence is a defense because it introduces into a case a new cause of plaintiff's injury making defendant's negligence no longer the legal cause. So in this case, defendant's wanton misconduct, as a legal cause of injury, was superseded by plaintiff's wanton or reckless misconduct which became the legal cause of his injury. See *Gill v. Arthur,* 69 Ohio App. 386, 43 N. E. 2d 894; *Schubring v. Weggen,* 234 Wis. 517, 291 N. W. 788; *Hinkle v. Minneapolis, A. & C. R. Ry. Co.,* 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377; *Southern Ry. Co. v. Carroll,* 138 Fed. 638; *Walsh v. Gazin,* 316 Ill. App. 311, 45 N. E. 2d 95; *Redson v. Michigan Central R. R.,* 120 Mich. 671, 79 N. W. 939; *Gray v. Esslinger,* 46 N. Mex. 492, 131 P. 2d 981; *Osteen v. Atlantic Coast Line,* 119 S. C. 438, 112 S. E. 352; *Price v. Schroeder,* 35 Cal. App. 2d 700, 96 P. 2d 949.

Plaintiff concedes the principle; in his brief it is said: "Plaintiff is barred from recovery if, being cognizant of the peril threatening him, his disregard for his own safety represents conduct of the same character as that of the defendant. In short, if defendant is guilty of negligence, plaintiff will be barred by contributory negligence. If defendant is guilty of reckless misconduct, plaintiff will be barred by his own recklessness. It is submitted that this is the purport of the decisions."

The judgment of the Superior Court is reversed and the judgment for the defendant entered by Court of Common Pleas No. 1 is reinstated.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

I would affirm the judgment of the Superior Court on the opinion of President Judge BALDRIGE reported in 160 Pa. Superior Ct. 291.

While I concur in the principles of law set forth in the majority opinion, I do not agree that these principles are properly applied to the facts as narrated by the plaintiff and which must be accepted in the light most favorable to the plaintiff's contention. It should not be held, on the present facts, as matter of law, that despite defendant's wanton negligence, plaintiff is barred from recovery because of his own wanton misconduct. In my view, plaintiff did *not* recklessly or unnecessarily expose himself to a known danger created by defendant's negligence. Plaintiff, of course, had no authority to assume the function of a traffic officer. According to plaintiff's testimony he became apprehensive that there might be a right angle collision between an approaching trolley car and fire truck. When he first stood between the rails of the single line trolley tracks and waved for the trolley car to stop before it reached the intersection, *the trolley car was approximately 400 feet away,* approaching at an estimated speed of 25 to 30 miles per hour. Defendant's testimony was that the trolley car was in full view of the plaintiff and, conversely, the plaintiff was in full view of the motorman. At a point less than 230 feet away, plaintiff turned around, still holding his hands up, and waved for the fire truck to come on. The trolley car, however, continued toward the plaintiff with unslackened speed. After the accident, the driver of the fire truck asked the motorman: "What is the idea of hitting that man? Didn't you see that man?" The motorman replied: "Sure, I saw the man, but what the hell is he doing on the track?" I agree with the Superior Court that if the motorman saw plaintiff on the track (which it is admitted that he did) *and that the plaintiff obviously was not going to move,* and

there was sufficient time for the motorman to have stopped the car (which is conceded), then it was the duty of the motorman to stop to prevent injury or death rather than run the man down. The motorman could have stopped his car and either caused plaintiff's arrest for obstructing traffic or have forcibly removed him from the tracks.

For these reasons I dissent.