Wendy VARGUS, Ind. and as Administratrix of the Estate of Jesse H. Vargus, Dec'd

v.

PITMAN MANUFACTURING COMPANY

v.

HENKELS & McCOY, INC.

Civ. A. No. 79–987.

United States District Court, E. D. Pennsylvania.

March 11, 1981.

---

Daniel J. Ryan, Kean K. McDonald, Peter J. Neeson, Labrum & Doak, Philadelphia, Pa., for plaintiff.

Sidney L. Wickenhaver and James R. Wendelgass, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was brought by the plaintiff seeking damages under the Pennsylvania Wrongful Death and Survival Statutes. Plaintiff's husband was electrocuted in Liberia while operating a hydra-lift truck-mounted crane to pick up a partially empty cable reel, when the boom of the crane came in contact with an overhead 12,000 volt high tension line, or came close enough to cause an arcing of current from the line to the boom. Trial was held before this court, sitting with a jury. The court provided the jury with special verdict interrogatories, and the jury returned a verdict finding that defendant Pitman Manufacturing Company was negligent, that the negligence was a proximate cause of the accident, and that the plaintiff's deceased husband had assumed the risk of harm, by voluntarily exposing himself to an obvious or known danger, and, under the court's direction, ended its inquiry at that point. Presently before the court is the motion of the plaintiff for a new trial. For the reasons which follow, the motion is denied.

## I.

■ Plaintiff claims that the court erred in placing the special jury interrogatory as to plaintiff's assumption of risk before the interrogatory concerning the issue of wanton and willful misconduct of defendant Pitman Manufacturing Company. Plaintiff argues that the jury was thereby precluded from considering that wanton misconduct overrides the defense of assumption of risk. Because under current Pennsylvania law assumption of risk is a complete bar to recovery even in an action for reckless, wanton and willful misconduct, we must reject this argument.

In the past, the distinction between assumption of the risk and contributory negligence has often been blurred because of the lack of need to distinguish between the two defenses so long as either remained a complete bar to a plaintiff's recovery. However, as a result of statutory and case law development in Pennsylvania, the distinction has acquired renewed significance. *See, Timby and Plevyak, The Effect of Pennsylvania's Comparative Negligence Statute on Traditional Tort Concepts and Doctrines,* 24 Villanova L.Rev. 453 (1979).

■ In *Pritchard v. Liggett & Myers Tobacco Co.,* 350 F.2d 479 (3d Cir. 1965), *cert. denied,* 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966), the Third Circuit divided Pennsylvania assumption of risk cases into two categories. Assumption of risk in its primary and strict sense was defined as a "voluntary exposure to an obvious known danger which negates liability." *Id.* at 484. Assumption of risk in its secondary sense was defined as ordinarily synonymous with contributory negligence and involv[ing] a failure to exercise reasonable care for one's own safety." *Id.* While assumption of risk in its secondary sense has been merged into the definition of contributory negligence, *see, Stephenson v. College Misericordia,* 376 F.Supp. 1324, 1327 (M.D.Pa.1974), and *Joyce v. Quinn,* 204 Pa.Super. 580, 205 A.2d 611 (1964), assumption of risk in its primary and strict sense has survived as a separate and distinct defense. *See, Henrich v. Cutler Hammer Co.,* 460 F.2d 1325 (3d Cir. 1972);

*Elder v. Crawley Book Machine Co.,* 441 F.2d 771 (3d Cir. 1971; *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975). It is that primary and strict sense of assumption of risk with which we are now concerned.

The policy reasons for a distinction between assumption of risk and contributory negligence are clear. The defense of assumption of risk (in its primary and strict sense) is based upon a policy of "refus[ing] recovery to persons who consciously expose themselves to known dangers ... [and is] deemed stronger than the one, reflected in the normal law of contributory negligence, which denies recovery to individuals whose conduct is merely lacking in due care under the circumstances." *McCown v. International Harvester Co.,* 463 Pa. at 18–19, 342 A.2d at 383–84 (Pomeroy, J., concurring). Recovery is barred because the plaintiff is assumed to have relieved the defendant of any duty to protect him. *Pritchard v. Liggett & Myers,* 350 F.2d at 484.

Stated in another way, by Dean Prosser, "assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of a reasonable man." W. Prosser, *Law of Torts,* § 68 at 441 (4th ed. 1971). For further discussion see the scholarly discourse on the doctrines of contributory negligence, assumption of risk, and comparative negligence, and their application to the law of the Virgin Islands, in *Keegan v. Anchor Inns, Inc.,* 606 F.2d 35 (3d Cir. 1979), in which Judge Hunter, writing for a unanimous panel, concluded that the defense of assumption of risk did survive adoption of a comparative negligence act.

■ Under Pennsylvania law, a plaintiff who knows of the existence of a risk and appreciates its unreasonable character, and who voluntarily exposes himself to that known or obvious danger, is deemed to have assumed the risk of harm and cannot recover. *Pritchard v. Liggett & Myers Tobacco Co.; Ferraro v. Ford Motor Co.,* 423 Pa. 324, 223 A.2d 746 (1966); *Kopp v. R. S. Noonan,*

*Inc.,* 385 Pa. 460, 123 A.2d 429 (1956); *Hall v. Ziegler,* 361 Pa. 228, 64 A.2d 767 (1949); *Weaver v. Clabaugh,* 255 Pa.Super. 532, 388 A.2d 1094 (1978). Pennsylvania law also has held that a plaintiff's contributory negligence, which would have otherwise barred recovery despite a finding of negligence on the part of a defendant, is negated by a defendant's reckless, wanton and willful misconduct, so that recovery is permitted. *Saaybe v. Penn Central Transportation Co.,* 438 F.Supp. 65, 69 n. 6 (E.D.Pa.1977); *Fugagli v. Camasi,* 426 Pa. 1, 229 A.2d 735 (1967); *Kasanovick v. George,* 348 Pa. 199, 34 A.2d 523 (1943). However, with the passage of the Pennsylvania Comparative Negligence Act, 42 Pa.Cons.Stat.Ann. § 7102(a), the doctrine of contributory negligence was subsumed within the doctrine of comparative negligence. The Act makes no mention of the doctrine of assumption of risk, or of the doctrine of reckless, wanton and willful misconduct.

In this case, assumption of risk is asserted as a defense to an action for reckless, wanton and willful misconduct. The issue raised by plaintiff is whether the doctrine of assumption of risk continues to survive in Pennsylvania as a bar to recovery, or, like contributory negligence, has it been merged into the Comparative Negligence Act, thus allowing for recovery, according to the terms of the statute, despite a finding of assumption of risk. We conclude that under current Pennsylvania law, assumption of risk is still a valid defense to a claim of reckless, wanton and willful misconduct.

The Comparative Negligence Act provides as follows:

In all actions brought to recover damages for negligence resulting in death or injury to a person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any dam-

ages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.Cons.Stat.Ann. § 7102(a) (1978).

No Pennsylvania case which we have found has as yet expounded upon the effect of the Comparative Negligence Act upon the doctrine of assumption of risk or upon the doctrine of reckless, wanton and willful misconduct. Within the context of a § 402A[1] products liability action, though, the Pennsylvania Supreme Court has abolished the defense of contributory negligence, *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975), despite its retention of the defense of assumption of risk, *Ferraro v. Ford Motor Co.,* 423 Pa. 324, 223 A.2d 746 (1966). Moreover, even under the Comparative Negligence Act, Pennsylvania has adopted a policy under which a plaintiff's conduct may still bar recovery if the plaintiff is found more negligent than the defendant.

In support of her argument that a defendant's reckless, wanton and willful conduct now negates a plaintiff's assumption of risk in addition to negating contributory negligence, plaintiff cites the Restatement of Torts, Section 482, which she claims was adopted by the Pennsylvania Supreme Court in *Elliott v. Philadelphia Transportation Co.,* 356 Pa. 643, 53 A.2d 81 (1947). However, far from bolstering plaintiff's position, the Restatement itself supports a rejection of her argument. Section 482(2) provides:

*A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if,* knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto." (emphasis added)

In other words, the Restatement provides that if assumption of risk is found, a plaintiff is barred from recovery even if the defendant's conduct was reckless. In addition, it is significant that after the *Elliott* decision, the Restatement of Torts was up-

---

**1.** Restatement (Second) of Torts, Section 402A.

dated, in 1963 and 1964. Section 482(2) of *Restatement (Second) of Torts* provides:

A plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm.

Section 496A of the *Restatement (Second) of Torts* provides:

A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm.

The comment to Section 496A states:

Assumption of risk operates as a defense against liability not only for negligent conduct, but also for reckless conduct, and conduct for which the defendant is subject to strict liability.

This doctrine is repeated in Section 503(4) of the *Restatement (Second) of Torts* which provides:

A plaintiff who assumes the risk arising from the defendant's reckless disregard of his safety is barred from recovery for such harm.

An issue not addressed by the parties is the continued viability of the reckless, wanton and willful misconduct doctrine. It has been argued by some commentators that the doctrine of reckless, wanton and willful misconduct was simply an attempt to apply a comparative fault system in a traditional common law contributory negligence jurisdiction. *See, Timby and Plevyak* at 468 and commentaries cited in note 75, and ought to be eliminated with the adoption of a comparative negligence statute, *Id.* at 468–471, and cases from other states cited therein. We are not persuaded though that the doctrine of reckless, wanton and willful misconduct is no longer applicable in Pennsylvania.

In the absence of any Pennsylvania case on point, or any mention of assumption of risk or reckless, wanton and willful misconduct in the Comparative Negligence Act, and in view of the Pennsylvania Supreme Court's retention of assumption of risk but rejection of contributory negligence as defenses to product liability actions, as well as of the policies behind the doctrines, and the positions adopted by the Restatement and Restatement (Second), we decline to say that the courts of Pennsylvania, if faced with this issue, would not recognize assumption of risk as a defense to an action for reckless, wanton and willful misconduct. Since there are no compelling reasons to reach a contrary result, we believe that any changes in the common law doctrines of reckless, wanton and willful misconduct and assumption of risk which may be occasioned by adoption of the Comparative Negligence Act are best determined by the courts and the legislature of Pennsylvania, and not by a federal court exercising diversity jurisdiction.

We have thus determined that under current Pennsylvania law a finding of reckless, wanton and willful misconduct does not negate a plaintiff's assumption of risk. Furthermore, it is not a pre-requisite to a finding of assumption of risk. Thus, there is no merit to plaintiff's contention that it was error to instruct the jury to first consider the question of assumption of risk before the question of reckless, wanton and willful misconduct. Indeed, the interrogatories submitted to the jury on the special verdict form were arranged in the most logical sequence, for the jury was spared the unnecessary effort of deliberating upon an issue no longer relevant once a finding of assumption of risk had been made.

## II.

█ Plaintiff next argues that this court erred in failing to charge that if the jury found that the decedent's conduct "amounted to nothing more than mere inattention, inadvertence or a mistake of judgment," then he did not assume the risk.

It was not error to refuse to charge the jury in precisely those words. This court did instruct the jury that if:

"Mr. Vargus subjectively knew, that is actually knew that there was the risk of electrocution if he used the Hydra-Lift in close proximity to high voltage wires, but that nevertheless being aware of this ob-

vious danger, he took or assumed the risk of electrocution, and by so doing brought about the injury to himself, even though the precise extent of the injuries might not have been anticipated or known to him, he may not recover."

The jury was further instructed that: "there is a presumption in law that a decedent was using due care at the time of his death and that he did not negligently or voluntarily bring about his own death, and that he took all normal and reasonable precautions to protect and preserve his life."

In light of these instructions, in finding that the decedent "voluntarily expose[d] himself to an obvious or known danger," the jury implicitly found that his death did not result from mere inattention, inadvertence, or mistake of judgment. Moreover, the evidence does not support the conclusion that the jury could reasonably have reached a different decision on this question had the plaintiff's proposed instruction been given as requested.

■ Plaintiff also argues that this court erred in failing to more specifically charge the jury that in order to find that the decedent assumed the risk, he must have had knowledge of the *specific nature* of the product's negligent design defect, yet nevertheless proceeded to bring about an undue risk of harm to himself by operating the product near high power lines.

Quite to the contrary, the above quoted instruction adequately informs the jury of the requisite knowledge on the part of the decedent for there to be a finding of assumption of risk. For the jury to conclude that the decedent *actually, subjectively knew that there was a risk of electrocution* if he used the product in close proximity to high voltage wires, it necessarily must have concluded that he had knowledge of the specific nature of its negligent design and appreciated the significance of that design.

Finally, there is no support in the record for plaintiff's contention that the evidence failed to show that the decedent was not aware of the hydra-lift's design or of the significance of that design. Indeed, the evidence revealed that the decedent was thoroughly familiar with the hydra-lift's design and highly experienced in its operation, and was employed in a supervisory capacity. Furthermore, the evidence demonstrated that power lines were in plain view, and that the decedent had been operating the hydra-lift between and in close proximity to them for some time before his death.

### III.

■ Plaintiff contends that this court erred in refusing to submit the question of strict liability to the jury. We have carefully considered this issue, and believe our original decision was correct. Nevertheless, even if removal of strict liability from the jury's consideration was error, it was harmless in view of the Pennsylvania Supreme Court's decision recognizing assumption of risk as a defense to a products liability claim. *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A.2d 746 (1964); *see, McCown v. International Harvester Co.*, 463 Pa. 13, 342 A.2d 381 (1975); *Restatement of Torts, (Second)*, Section 402A, Comment n.

As is the case with regard to assumption of risk as a defense to a claim of reckless, wanton and willful misconduct, there is at this time no reason to believe that Pennsylvania intended to eliminate this doctrine as a defense to a claim of strict products liability with the adoption of the Comparative Negligence Act.

Since the jury found that the decedent voluntarily exposed himself to an obvious or known danger, recovery would be precluded on the strict liability claim even if that question had been presented to the jury.

Moreover, contrary to the plaintiff's assertion, this court did not err in our interpretation of the teaching of the Pennsylvania Supreme Court in *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978) when we refused to present the products liability claim to the jury. Rather, in so doing, we adhered to the mandate set forth in *Azzarello* to be followed by a trial court:

"[T]he determination as to the risk of loss is a decision to be made by the finder of

fact or by the court. While a lay finder of fact is obviously competent in resolving a dispute as to the condition of a product, an entirely different question is presented where a decision as to whether that condition justifies placing liability upon the supplier must be made. (footnote omitted) 480 Pa. at 556, 391 A.2d at 1025."

"It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified, and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint." 480 Pa. at 558, 391 A.2d at 1026.

Accordingly, we resolved the *legal* questions of social policy regarding the availability and placement of liability under the plaintiff's *averment* of facts before permitting the jury to address the purely *factual* questions regarding the *actual* design or condition of the product alleged to be defective. Furthermore, our conclusion that the products liability claim was not appropriate for consideration by the jury was not the result of a misapplication of the facts to law, as asserted by the plaintiff.