## Lynch v. McStome & Lincoln Plaza Associates

*Gerry Woods,* for plaintiff Lynch.

*Fred J. Silverman,* for defendant McStome & Lincoln Plaza Associates.

*William V. Coleman,* for defendant Montgomery Elevator.

*Arthur R. Tilson,* for defendant General Elevator.

YOHN, *J.,* November 9, 1987—Plaintiff, Clare Lynch, sued McStome and Lincoln Plaza Associates, Montgomery Elevator Company and General Elevator Company Inc. on negligence grounds only for injuries she received at Oxford Valley Mall when the escalator upon which she was riding came to an allegedly sudden and abrupt stop.

The subject escalator was manufactured by additional defendant, Montgomery Elevator Company in 1973. In that same year, the escalator was purchased by defendants McStome and Lincoln Plaza Associates and installed at the Oxford Valley Mall owned by them. The escalator has been maintained by additional defendant General Elevator Company, since the date of installation. The accident in question occurred on June 26, 1982.

The action was tried before the undersigned and a jury; and on August 6, 1986, the jury returned a

verdict in favor of defendants. The jury found that Montgomery was not negligent and that the negligence of the mall and General was not a substantial factor in bringing about plaintiff's harm.

Plaintiff filed a motion for post-trial relief on August 15, 1986. Plaintiff then filed supplemental post-trial motions on March 13, 1987, but did so in violation of Montgomery County Rule 252. On July 27, 1987, after oral argument, this court in two separate orders denied plaintiff's motions for post-trial relief and thereafter judgment was entered upon the findings of the jury in favor of defendants. It is from this judgment that plaintiff appeals.

In this instant appeal plaintiff raises the following issues:

(1) Plaintiff contends that the court erred in refusing to admit under a negligence theory evidence as to the possibility of a retrofit of the brake on the subject escalator by defendant Montgomery Elevator Company and reports of accidents to said defendant subsequent to the date of manufacture of the subject escalator but prior to the date of plaintiff's accident in the category of "stopped abruptly" and said defendant's failure to perform or consult studies regarding safe stopping distances subsequent to the subject escalator's manufacture in 1973 but prior to plaintiff's accident.

(2) Plaintiff contends that the court erred in refusing to exclude as evidence videotapes manufactured and produced by additional defendant Montgomery Elevator Company on the basis that said videotapes lacked probative value because of the dissimilarity in testing conditions and also whatever value said test may have had, same was outweighed by the risk that its admissibility was misleading and prejudicial.

(3) Plaintiff contends that the court erred in refusing plaintiff's charge to the jury on the doctrine of res ipsa loquitur as to defendants McStome & Lincoln Plaza Associates and General Elevator Company, based on applicable Pennsylvania law.

(4) Plaintiff contends that the court erred in charging the jury on negligence of plaintiff in the absence of any evidence of same, circumstantial or otherwise.

(5) Plaintiff contends that the court erred in charging that the jury could draw on adverse inference if it determined that plaintiff's expert witness, Lester Moskowitz, did not satisfactorily explain his failure to produce a videotape since such a videotape could not be admissible as evidence.

(6) Plaintiff contends that the court erred in denying plaintiff's motion to file additional reasons in support of its motion for a new trial under local rule 252.

We will address these issues accordingly.[1]

## DUTY TO RETROFIT

Plaintiff first contends that the court erred in not allowing into evidence reports from other escalator owners given to Montgomery subsequent to its manufacture of the instant escalator concerning accidents on other escalators due to the escalator stop-

---

1. In addition to these issues, plaintiff in her motion for a new trial raised several other issues. However, plaintiff did not brief these other reasons, did not address them in oral argument and did not include them in her statement of matters complained of; therefore, these issues are not preserved and are waived. *Trustees of First Presbyterian Church of Pittsburgh v, Oliver-Tyrove Corp.*, 248 Pa. Super. 470, 375 A.2d 193, (1977); *Sladkin v. Greene*, 359 Pa. 528, 59 A.2d 105 (1948).

ping abruptly. She also asserts that the court should have allowed into evidence proof that Montgomery failed to perform or consult studies about safe stopping distances of escalators available after the date of manufacture but prior to the date of the accident. Plaintiff asserts that Montgomery is a "common carrier" and as a result, owes the highest degree of care to plaintiff. Plaintiff concludes, therefore, that the aforesaid evidence would have established a duty on Montgomery to retrofit the brakes on the escalator which it manufactured in 1973. Plaintiff's contentions in this regard are without merit and contrary to Pennsylvania law.

Plaintiff has failed to provide the court with any statutory or case law in Pennsylvania imposing upon a manufacturer a duty to retrofit an instrumentality which is a common carrier.

Courts in other jurisdictions that have addressed the issue have held a manufacturer has no duty to retrofit. For example, in *Smith v. Firestone Tire and Rubber Company*, 755 F.2d 129 (Eighth Cir. 1985) plaintiff sought to recover for personal injuries she received as a result of an exploding tire rim manufactured by defendant. At the close of trial, plaintiff requested that the court instruct the jury that defendant was negligent in not recalling and/or retrofitting the rim. Id. at 134. The trial court denied plaintiff's request. In affirming the trial court's ruling the Eighth Circuit stated:

. "[Plaintiff] provides no statute or case law to support their position that [defendant] was under a legal duty to recall the rims. While such a duty may have existed had the Department of Transportation ordered a recall, . . . . no such notification of defect and remedy order had been given pertaining to these rims. Since no duty to recall was established,

a fundamental prerequisite to establishing negligence was absent. . . ." Id. at 135 (citations omitted).

In *Syrie v. Koll International,* 748 F.2d 304 (Fifth Cir. 1984), plaintiff was injured when the back of the stool she was sitting on fell off and the stool rolled out from underneath her. She contended that defendant was negligent in not warning her of the hazards discovered years after the stool had been manufactured and sold and failing to recall the stools to correct these deficiencies. Id at 310. In affirming the trial court's rejection of plaintiff's claims the Fifth Circuit in its opinion cited to a criticism in another case and stated:

*"No authority is cited by the court and none exists for the proposition that, once a manufacturer designs and markets an improved component for its new products, it then assumes a duty to complete the remedy by causing the substitution of the improved component in used products that are already on the market."* Id. at 311 (emphasis added).

These cases clearly demonstrate that a manufacturer such as Montgomery has no duty to install all new developments with reference to its products on all of its old products.

Perhaps, most important in this discussion of Montgomery's alleged duty to retrofit the brakes on its escalator is the argument made by plaintiff's counsel at trial. Mr. Woods stated that if Montgomery "were not a common carrier, . . . I think the duty is more or less cut off at either the time of manufacture or sale." Thus, plaintiff's contention is bottomed on her conclusion that Montgomery, even though a manufacturer, is a common carrier.

A common carrier has been defined in this commonwealth and other jurisdictions as "one who holds himself out to the public as engaged in the

business of transportation of persons or property from place to place for compensation, offering his services to the public generally." *Kelly v. General Elec. Co.,* 110 F.Supp. 4, 6, (E.D. Pa. 1953), aff'd 204 F.2d 692 (Third Cir. 1953), certiorari denied 74 S.Ct. 137, 346 U.S. 886, 98 L.Ed. 390 (1953); See also, *Merchants Parcel Delivery v. Pennsylvania Public Utility Commission,* 150 Pa. Super. 120, 28 A.2d 340 (1942).

In the instant matter, there has been no showing by plaintiff that Montgomery, as a manufacturer, comes within the terms of the definition of a common carrier set forth above. Thus, in light of the fact that Montgomery is not a common carrier, the argument made by plaintiff's counsel at trial amounts to an admission that Montgomery had no duty to retrofit the braking system on the subject escalator.

Likewise, it is well established law in this commonwealth that only owners/operators of common carriers are held to the highest degree of care. *McGowan v. Devonshire Hall Apartments,* 278 Pa. Super. 229, 420 A.2d 514 (1980); *Gilbert v. Korvette's Inc.,* 457 Pa. 602, 327 A.2d 94 (1974); see also *Petrie v. Kaufman and Baer Co.,* 291 Pa. 211, 139 A. 878 (1927). In his concurrence in *Gilbert,* supra, Chief Justice Jones stated:

*"At no time . . . , has this court, or any court to my knowledge, held that the conduct of a manufacturer . . . of an instrumentality which is a common carrier is governed by the standard of the highest degree of care." Gilbert,* 457 Pa. at 622 (emphasis added).

If a manufacturer is not governed by the standard of the highest degree of care, and only common carriers are held to that degree of care, it follows that Montgomery is not a common carrier and, therefore, has no duty to retrofit.

Finally, the reports of the prior incidents submitted by others to Montgomery were not specific enough as to their nature or cause in order to make them relevant to the incident in question. The reports merely reported numerically incidents in other stores where the escalator came to an "abrupt stop" in the opinion of the person submitting the report with no further explanation of the nature or cause of the stop or the circumstances surrounding the same. This evidence would obviously be extremely prejudicial to Montgomery and that prejudice would substantially outweigh any minimal probative value that it might have. This is particularly true in view of the fact that none of the reports related to the escalator in question. Based on the foregoing, the court's exclusion of the evidence was correct.

## ADMISSION OF MONTGOMERY'S VIDEOTAPED EXPERIMENTS

Plaintiff next contends that the court erred in admitting as evidence videotapes produced by Montgomery. The videotapes were made in conjunction with the testimony of Montgomery's expert witness, Robert Schaffer, and demonstrated to the jury what occurs on an escalator when it comes to a stop. The tapes show a glass, partially filled with a dark-colored liquid, riding on the tread of the escalator. The videotapes next show the escalator being brought to a stop at three different stopping distances, i.e., 4, 6 and 10½ inches relevant to plaintiff's claim. Each time the escalator was brought to a stop, the glass remained in a stationary position and the jury could observe the extent of the movement of the liquid. Plaintiff's counsel objected to the showing/admission of the tapes on the grounds that

the tapes had no reasonable connection to the accident. The court overruled plaintiff's objections and the tapes were shown during Schaffer's direct examination.

"Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value." *Commonwealth v. Walzack,* 468 Pa. 210, 218, 360 A.2d 914, 918 (1976); *Commonwealth v. Jones,* 459 Pa. 62, 66, 327 A.2d 10, 13 (1974); *Commonwealth v. McCusker,* 448 Pa. 382, 388, 292 A.2d 286, 289 (1972). In essence, the relevancy of proferred evidence at trial requires a two-step analysis: "First, it must be determined whether the inference sought to be raised by the evidence bears upon a matter in issue in the case, and second, whether the evidence renders the desired inference more probable than it would be without the evidence." *Commonwealth v. Miller,* 268 Pa. Super. 123, 133, 407 A.2d 860, 865 (1979); *Commonwealth v. Scott,* 480 Pa. 50, 54, 389 A.2d 79, 82 (1978). The evidence offered by Montgomery satisfied both parts of this analysis. The videotapes related directly to the issue of the stopping of the escalator at the various stopping distances at issue in the case and its effect upon a person or thing riding on the escalator at the time of the stop.

The court notes that "experimental evidence is admissible so long as it is relevant and probative, and such evidence has probative value if the conditions of the experiment are identical with or similar to the conditions of the transactions in litigation." *McCrorey v. Obermayer, Rebmann, Maxwell and Hippel,* 14 D.&C.3d 335, 345 (1978); citing *Glick v. White Motor Co.,* 458 F.2d 1287, 1294 (Third Cir. 1972); *Crown Cork & Seal Co. v. Morton Pharmaceuticals Inc.,* 417 F.2d 921 (Sixth Cir. 1969); *Weaver v. Ford Motor Co.,* 382 F.Supp. 1068

(E.D. Pa. 1974), aff'd without opinion, 515 F.2d 506, 507 (Third Cir. 1975). Furthermore, once the similarity between the conditions of the experiment and actual event is established, any differences between the two goes only to the weight to be given to the experimental evidence. *Hopkins v. E. I. DuPont DeMemours & Co.*, 199 F.2d 930 (Third Cir. 1952). Moreover, "the admission of testimony based on experiments is a matter resting largely within the discretion of the trial court." Id. at 934.

In her post-trial brief, plaintiff argues that the videotapes should have been excluded as evidence because they were misleading and prejudicial. We note that "prejudice does not mean detrimental to a party's case but rather an undue tendency to suggest decision on an improper basis." *House of Pasta Inc. v. Mayo*, 303 Pa. Super. 298, 313 n.6, 449 A.2d 697, 704 n.6 (1982).

The videotapes were intended to demonstrate to the jury what occurs on an escalator when it comes to a stop. By showing the experiment at stopping distances of 4, 6 and 10½ inches the experiment adjusted for any differences in stopping distance that may have existed at the time of the accident. The jury could make its own determination of the stopping distance at the time of the accident and then relate to the results of the experiment for that particular distance.

Plaintiff also argues that the experiments conducted by Montgomery were performed under widely divergent circumstances and not sufficiently similar to those of the actual event. To use a human being, however, as plaintiff suggests, rather than a glass of liquid, would have increased the variables rather than decreased them because the person would be aware of the fact that the elevator was about to stop and would be prepared for the stop.

Therefore, based on all of the above, the videotapes were admissible.

Even if the court erred in admitting the videotapes as evidence, plaintiff's counsel, by withdrawing his objection to the videotapes at the time of trial, and by registering no objection when they were offered into evidence, waived any claim to error he might have had. It is well established law in Pennsylvania that in "order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions." *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 222, 489 A.2d 1291, 1296 (1985).

A review of the record shows that plaintiff's counsel initially objected to the introduction of the videotapes produced by Montgomery. Plaintiff's counsel, however, after having a chance to view the videotapes over the lunch break, withdrew his objection. Furthermore, when Montgomery showed the videotapes during its direct examination of its expert witness, Robert Schaffer, plaintiff's counsel made no objection. Plaintiff's counsel also failed to make an objection when the videotapes were offered into evidence by Montgomery's counsel at the close of its case. As a result, plaintiff has waived any objection she might have had to the introduction of Montgomery's videotapes.

## REFUSAL TO GIVE RES IPSA LOQUITUR CHARGE

Plaintiff also claims that the court erred in refusing her charge to the jury on the doctrine of res ipsa loquitur as to defendants mall and General.[2] The

---

2. Plaintiff has conceded that the doctrine does not apply to Montgomery, the manufacturer, by not requesting a res ipsa loquitur charge as to Montgomery in her proposed jury instructions.

court disagrees.

In *Gilbert v. Korvette's Inc.*, 457 Pa. 602, 327 A.2d 94 (1974) the Supreme Court of Pennsylvania adopted section 328D of the Restatement (Second) of Torts, titled Res Ipsa Loquitur, Section 328 which provides:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes, including the conduct of plaintiff and third persons, are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of defendant's duty to plaintiff.

"(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.""

The courts have made it clear "that all three elements set out in section 328D(1) must be satisfied before an inference of negligence can be drawn from an injurious event. *Smith v. City of Chester*, 357 Pa. Super. 24, 27, 515 A.2d 303, 305, (1986); *Lanza v. Poretti*, 537 F.Supp. 777 (1982).

In the instant case, plaintiff has not satisfied all three elements set out in section 328D(1). The court does not believe that the accident in question was of the type that would not have ordinarily occurred in the absence of negligence. Escalators stop frequently and certainly it cannot be said that such a stop ordinarily does not occur in the absence of negligence. More importantly, plaintiff has failed to

eliminate other responsible causes for the accident other than negligence. In fact, plaintiff presented evidence through her expert witnesses that determined the exact cause of the accident. Plaintiff's expert witness, Carl J. White, when questioned on direct examination stated that the accident was caused by the microswitches being improperly located. The microswitches were located by Montgomery, not the mall or General against whom the res ipsa loquitur charge was requested. Another cause that was suggested was that of children pushing the emergency button. Still another suggestion was that the weight of a third person accompanying plaintiff as he stepped on the escalator at an angle caused the escalator to stop. For the above reasons a res ipsa loquitur instruction was not warranted.

The court further points out that in *Reilly by Reilly*, supra, the Supreme Court of Pennsylvania held:

"In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed *and whether that error was prejudicial to the complaining party.*" (citations omitted). *Reilly by Reilly*, 489 A.2d at 1305 (emphasis added); see *Dunlop v. Larkin*, 342 Pa. Super. 594, 493 A2d 750, (1985).

Even assuming arguendo that the court erred in refusing plaintiff's proposed instruction on res ipsa loquitur, such error was harmless in view of the jury verdict. Both defendant mall and defendant General were found to be guilty of negligence by the jury. They were relieved of liability because the jury found that their negligence was not a substantial factor in causing the injury to plaintiff. In view of

the jury's finding, the court's failure to charge on the res ipsa loquitur doctrine was harmless error.

## CONTRIBUTORY NEGLIGENCE CHARGE

Plaintiff next argues that the court erred in charging the jury with regard to plaintiff's contributory negligence because she contends there was no evidence indicating such conduct.

Plaintiff is incorrect in her assertion that the record is devoid of any evidence, direct or circumstantial, that she was contributorily negligent. Plaintiff's own expert witness testified to the fact that one cause of people falling on escalators is a rider being inattentive. In addition, Montgomery presented (as was stated earlier) videotapes to the jury showing that when the escalator in question came to a stop it did so smoothly with no visible effects on the people riding the escalator. Thus, from plaintiff's expert witnesses and the videotapes presented by Montgomery, the jury could have drawn an inference of negligence on the part of plaintiff in bringing about the accident. In the case of *Hefferman v. Rosser,* 419 Pa. 550, 215 A.2d 655 (1966), the Pennsylvania Supreme Court held that, "where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof." Id. at 454, 455, 215 A.2d at 657.

In addition, there was no objection at the time of trial by plaintiff's counsel to the charge on contributory negligence. Pennsylvania Rule of Civil Procedure 227(b) states: "[U]nless specifically allowed by the court, all exceptions to the charge to the jury shall be taken before the jury retires." Even where the alleged error in the charge is of a basic and fundamental nature, which this clearly is not, appellate courts have stated that they will not reverse on a

point where no exception or only a general exception was taken to the charge. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). Contrary to what plaintiff's counsel contends, he made no objection on the record to the court's inclusion of the requested charge on contributory negligence. Furthermore, at the conclusion of the reading of the instructions by the court to the jury, plaintiff's counsel did not take any general or specific exception to the court's charge on contributory negligence. In fact, plaintiff's counsel requested a charge on comparative negligence in his points for charge which includes the concept of contributory negligence. *Vargus v. Pitman Mfg. Co.,* 510 F.Supp. 116 (1981), affirmed *Pitman Mfg. Co. v. Henkels and McCoy Inc.,* 673 F.2d 1301 and 673 F.2d 1304 (1981), rehearing denied 675 F.2d 73 (1982). Plaintiff by failing to take a specific exception to the court's charge to the jury on contributory negligence has waived any objection.

Most significantly, the jury did not reach the issue of contributory negligence so that any error in this regard would be harmless. The jury found that all defendants were either not negligent or that their negligence was not a substantial factor in causing the accident. The jury never reached the question of negligence on the part of plaintiff. As a result, the question of contributory negligence passed out of the case, and any error in the charge in this respect would not have been prejudicial to plaintiff. *Whitton v. H. A. Cable Co.,* 331 Pa. 429, 200 Atl. 644 (1938). In order to constitute reversible error, the complaining party must show that the evidence or instruction to the jury was both erroneous and harmful. *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965).

## MISSING EVIDENCE CHARGE

Plaintiff next argues that the court erred in charging the jury that it could draw an adverse inference if it determined that plaintiff's expert witness, Lester Moskowitz, did not satisfactorily explain his failure to produce a videotape that he had made since such a videotape could not be admissible as evidence.

We initially point out that plaintiff argued in her post-trial brief that the tape made by her expert was not admissible as evidence because it was not substantially similar to the factual situation and since it was not admissible as evidence there could be "no missing evidence charge." Unfortunately for plaintiff, she did not make this argument at the time of trial. As a result, pursuant to *Reilly v. Reilly,* 489 A.2d at 1296, it would not be apropriate to raise this argument now if she did not do so at the time of trial.

In any event, the court was correct in charging the jury that it could draw an adverse inference if it determined that plaintiff's expert witness did not satisfactorily explain his failure to produce said videotape.

The videotape experiments conducted by Moskowitz were similar to those conducted by Montgomery and consisted of placing a glass filled with liquid on the steps of a downward escalator and then stopping the escalator by pressing the emergency stop button. In fact, it was originally Moskowitz's concept to conduct such an experiment to show the effect of an escalator stop. When Montgomery learned of the videotaped experiment it requested a copy. In response to Montgomery's request plaintiff's counsel stated that Moskowitz had mistakenly erased the videotapes. Montgomery

thereafter conducted its own experiment of a similar nature as discussed above, which was admitted into evidence.

The rule of law in Pennsylvania regarding missing evidence is:

"[W]here evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw the inference that it would be unfavorable to him." *Williams v. Philadelphia Transportation Co.*, 415 Pa. 370, 378, 203 A.2d 665, 670 (1964), *Wills v. Hardcastle,* 19 Pa. Super. 525, 529 (1902), and quoted with approval in *Haas v. Kasnot,* 371 Pa. 580, 584-85, 92 A.2d 171 (1952). Furthermore, the trial court is to be given liberal discretion in the use of this instruction. *Steel v. Snyder,* 295 Pa. 120 144 A. 912 (1929). In the instant matter it is plaintiff in whose interest it would be to produce the videotape since her expert conceived and conducted the experiment and it was she who has failed to do so.

Plaintiff contends that the instruction should not have been put to the jury because the videotapes did not qualify as evidence. Plaintiff is incorrect in her contention. In his direct and re-direct testimony, Moskowitz, plaintiff's own witness, testified in detail about the purpose of conducting the videotaped experiments.

In addition, on cross-examination Moskowitz testified that he conducted the videotaped experiments in order to further explain and/or clarify his expert reports. It was plaintiff who brought the issue of the videotape into the trial and it certainly would be appropriate evidence on cross-examination of Moskowitz once he testified as to his reasons for conducting the experiment and the fact that he ac-

tually conducted the experiment and videotaped it. Therefore, based on the foregoing, plaintiff's claim that the videotapes did not qualify as evidence is without merit and the court was correct in its charge to the jury in this matter.

## DENIAL OF ADDITIONAL REASONS UNDER RULE 252

Plaintiff's final contention is that the court erred in denying her motion to file additional reasons in support of her motion for a new trial under local rule 252. The additional reasons that plaintiff sought to add in support of her motion for a new trial are:

(1) The court erred in failing to grant plaintiff's motion to allow an amendment of defendants, McStome & Lincoln Plaza Associates, and additional defendant, General Elevator Company Inc.'s, complaints against additional defendant, Montgomery Elevator Company, to include a count in products liability and/or to construe such complaints as setting forth a claim in strict liability.

(2) The court erred in refusing to admit evidence in the nature of expert testimony that the employees of additional defendant, General Elevator Company, were improperly trained.

(3) The court erred in refusing to exclude hearsay evidence regarding children pushing the stop button of the subject escalator.

Montgomery County Local Rule 252 provides:

"All post-trial motion at law, exceptions to decisions in nonjury civil trials, and exceptions to equity adjudications shall be filed in writing with the prothonotary within 10 days after verdict, nonsuit decision, or adjudication. . . . Additional reasons in support of such motions or exceptions shall be filed within 10 days of receipt by counsel of a copy of the

trial transcript if permitted by leave of court."

This court in the case of *Gutman v. Rissinger,* 118 Montg. L.R. 59 (1986) discussed the application of local rule 252. In particular, the court's opinion discussed extensively the last sentence (if permitted by leave of court) of rule 252. In *Gutman,* only boilerplate reasons were alleged; however, adding some specific reasons to the original motion (as is the situation in the instant matter), should not give plaintiff the right to add additional specific reasons later.

In *Gutman,* supra, the Honorable Samuel W. Salus stated:

*"It appears to the court that the purpose of rule 252 is to give a party an opportunity to file additional reasons in support of post-trial motions after receiving the trial transcript to cover those items which were not immediately apparent at the time the motion was prepared. Therefore, additional reasons filed must reflect the necessity of consulting with the notes of testimony in discovering and framing the specific assignments of error. The court will have discretion to determine whether a party's use of the transcript is in accordance with rule 252 or just a pretext to include specific assignments of error which should have been included in the original motion for new trial."* Id. at p. 61 (emphasis added).

The real issue to be decided is whether the additional reasons plaintiff sought to add in support of her motion for a new trial should have been apparent at the time plaintiff filed her original motion for a new trial on August 15, 1986. Put another way, was it necessary for plaintiff to consult with the notes of testimony in order to frame the additional specific assignments of error? We contend that it was not.

With reference to plaintiff's request relating to the amendment of the complaint, this is a fundamental matter which was addressed at the beginning of the trial, did not rely in any way on testimony and was an issue clearly apparent to everyone as of the beginning of the trial without the need for a transcript. This reason should have been included in the original post-trial motion if plaintiff desires to pursue it and there is no reason to allow plaintiff to file it on a nunc pro tunc basis. Furthermore, it is patently clear that on the merits of this issue plaintiff cannot prevail. Plaintiff cannot amend the complaint of defendant against an additional defendant. Moreover, it would have been manifestly unfair to allow plaintiff to amend her complaint as the jury was about to be selected to include a product liability claim when her sole theory of liability in the original complaint and throughout the discovery phase of the case was one of negligence.

Plaintiff's second and third additional reasons were equally apparent at the time of her filing her original post-trial motion. Plaintiff's counsel filed his additional reasons for a new trial on March 13, 1987, three days after the full balance of the transcript had been received. Thus, at first glance it would appear that plaintiff's counsel had filed his additional reasons for a new trial in compliance with local rule 252 albeit without court approval. A closer look, however, reveals otherwise. Plaintiff's second and third additional reasons arose out of the proceedings of August 1, 1986. This transcript was delivered to the parties on or around January 21, 1987, two months before the request to file additional reasons was made. In fact, plaintiff's counsel in a letter to the undersigned acknowledged that he had received what he believed to be the full trial transcript on January 21, 1987. By chance, plaintiff's counsel

learned from court reporter on March 5, 1987, that the July 29, 1986, notes of testimony had not yet been forwarded to him. However, this is not the portion of the trial transcript that plaintiff's counsel relied on to file his second and third additional reasons. Therefore, plaintiff's failure to file additional reasons for a new trial on issues two and three within 10 days of receipt of the August 1, 1986, transcript on January 21, 1987, constitutes a waiver by plaintiff on these issues.

For all of the foregoing reasons, this court's order of July 27, 1987, denying plaintiff's motions for post-trial relief should be affirmed.